164 So.2d 704

**John COLEMAN**

v.

**STATE of Alabama.**

2 Div. 434.

Supreme Court of Alabama.

May 9, 1963.

Rehearing Denied June 20, 1963.

Certiorari Granted Oct. 28, 1963.

See 84 S.Ct. 177.

Remanded after Reversal by United States Supreme Court

May 28, 1964.

Orzell Billingsley, Jr., Birmingham, for appellant.

Richmond M. Flowers, Atty. Gen., and Dwight W. Bradley, Asst. Atty. Gen., for appellee.

SIMPSON, Justice.

John "Big Time" Coleman, a Negro, was indicted, tried and convicted of murder in the first degree of one John D. "Screwdriver" Johnson, a white mechanic, and his punishment was fixed at death. The appeal is taken pursuant to the automatic appeal statutes, § 382(1) et seq., Title 15, Code of Ala.1940.

"Screwdriver" Johnson was killed on Wednesday, August 30, 1961, while returning to his home in Eutaw, Alabama about 9:15 in the evening. The cause of death was a shotgun wound on the left side of the chest entering the heart. The apparent motive was robbery, as a billfold which Johnson habitually carried was not found on the body; only the leather strap was attached to his belt. The decedent's body was found in the street in front of his home by a passerby in an automobile. A screwdriver was found in decedent's hand, with which he had probably tried to defend himself. There were four shots fired, two hitting the deceased. Number five shot were removed from the body and a nearby building. Four shotgun shells, 12 gauge Red Western Super X brand, number five shot were found in decedent's back yard and were sent to the State Toxicologist.

Some ten unfired shotgun shells of the same brand and type as the other four were found underneath an abandoned building across the street from decedent's house, along with a piece of minnow seine which the State contended appellant had used to mask his face. Another piece of seine was found on a barbed wire fence to the rear of decedent's house. These were all sent to the Toxicologist for examination. About the piece of minnow seine found underneath the abandoned house were men's footprints made by a person wearing a narrow pointed shoe. Appellant wore this type shoe at the trial.

Banks & Company, a retail store in Eutaw, had been burglarized on the day before the killing. On the preceding Saturday appellant had escaped jail in Eutaw. There was testimony that a Negro about the size of appellant was seen behind the building and other testimony that appellant was seen in front of the building the night of the burglary. Among the items missing from the store was a 12 gauge Browning automatic shotgun, 30 inch barrel, full choke, standard grade, and shotgun shells of the same brand and type as were found near decedent's home. Certain items of clothing were found missing, including a shirt and sport coats. A button was found near the rear window of the store, which had apparently been pulled from the clothing worn by the burglar in entering the window. The button was sent to the State Toxicologist for examination.

Prior to August, 1961, appellant had on two or three different occasions worked for the proprietor of a minnow pond located on the Tuscaloosa Highway. On or about August 30, 1961, a small building near the pond was entered and a piece of net was cut from one of the minnow seines. It was later determined that two pieces, the one found underneath the building and the other found on the barbed wire fence, perfectly matched the larger piece. A loud sport shirt with the second button missing was found near the pond. Also found was a collar board, the type used to hold new shirts, and a tag used to mark and identify the size of new pants.

The shirt with the missing button, found near the pond, was one of two, of medium size sold by Banks & Company during the year and nowhere within a one hundred mile radius of Eutaw were such shirts sold by any other. Two witnesses testified that they had seen appellant wearing a shirt of this type during the summer. The shirt, of very striking colors, was apparently bought by appellant along with a pair of khaki pants from Banks & Company and were charged to someone for whom appellant had worked. The charge ticket for these two items was entered into evidence.

Another shirt and two sport coats of the type stolen from Banks & Company were found in appellant's possession when he was arrested in Cleveland, Ohio. Appellant claimed he had paid cash at Banks & Company for the items, but none of the sales personnel remembered such a transaction with appellant. Also found in his suitcase was a pair of khaki pants. All of this clothing was sent to the State Toxicologist.

Appellant when asked where he procured the money for travel to Cleveland, stated that he had won most of it in a crap game with two other Negroes. These persons, however, testified that at no time during August, 1961 had they given appellant any money, nor had he won any money from them in a crap game.

Certain checks which the decedent or his wife had cashed for appellant were entered into evidence, being identified by the cashier of the local bank.

Dr. Nelson Grubbs, State Toxicologist, who aided in the investigation of this case is to be commended for his able scientific preparation of the evidence for presentation at trial. His testimony seems to tie up the vast web of circumstantial evidence, which if believed by the jury, would point, without doubt, to the guilt of appellant.

Dr. Grubbs testified that he examined the four shotgun shells which had been fired, and in his opinion, based on test firings of shotguns in his laboratory, the shells had been fired from a new Browning automatic shotgun, standard grade. The shot, which were removed from decedent's body, were also examined and determined to be number five Western Super X shot.

The pieces of minnow seine were determined by Dr. Grubbs to have been cut from a larger piece discovered at the minnow pond. The missing button was determined to have been pulled from the shirt found at the pond; the fibres under the button were the same as the fibres of the shirt and the thread size was identical.

In the pocket of this shirt were found light and dark blue fibres, wood chips, some of which contained a green stain (determined to be coppertox), and an eyelash with purple mascara, nylon fibres of the same type as the seine, and some traces of carnauba wax of the type used for coating shotgun shells. The unfired shells were examined and found thereon were light and dark blue fibres, wood chips with the green coppertox stain, purple mascara, and also the nylon fibres of the same type

as the seine. In the opinion of Dr. Grubbs, the shells had at one time been contained in the pocket of the shirt. The shirt, which evidently was purchased from Banks & Company by appellant, was apparently the same shirt which witnesses had testified they saw appellant wear. As stated, it was in evidence that the shirt was very "loud" and that there had been only two of the same size within a one-hundred-mile radius.

Dr. Grubbs further testified that upon examination of a sport coat of the same type as that stolen from Banks & Company, and found in appellant's possession in Cleveland, he found in the pocket: eyelashes with purple mascara, wood chips with coppertox, and that these items were chemically identical to those same items found in the shirt pocket and on the shotgun shells. The wood chips were evenly cut and appeared to have been produced by cutting wood with a high speed tool.

Dr. Grubbs determined the khaki pants found in appellant's suitcase in Cleveland to be of the type khaki normally used as work pants, and that the tag found at the minnow pond perfectly matched the stitching on the pants, being unevenly sewn and in his opinion had been sewn thereon at one time. He further testified that the pants had been wet at some time, but due to the absence of scrub marks had probably never been washed. It was in evidence that it was foggy or raining the night decedent was killed.

The collar board found at the minnow pond was determined by Dr. Grubbs to be of the identical cut as that on shirts of the same brand sold by Banks & Company. The saw marks on the cardboard were exactly the same.

The only defense, other than the general denial of the State's allegations, is what purported to be an alibi. Testifying in his own behalf, appellant stated that he had visited with his mother in Birmingham, Alabama on a Monday in the latter part of August, 1961, but that he did not remem-

ber the exact date; that he traveled on to Cleveland to see his wife, arriving there on a Thursday. Both appellant's mother and his stepfather testified that he had visited with them on a Monday, but they did not remember the date, but that it was in the latter part of August. The deceased was killed on a Wednesday.

Appellant devotes most of his argument on appeal, having raised the point by a motion for a new trial, that the practice of the Greene County Jury Commission in selecting grand and petit jurors resulted in the arbitrary and systematic exclusion of Negroes on racial grounds and is contrary to the equal protection clause of the 14th Amendment. Appellant's attorney was given an opportunity on the hearing of the motion for a new trial to adduce evidence of any systematic exclusion but none was introduced other than an affidavit of appellant's mother that her son was indicted by a grand jury composed of white men, and tried and convicted by a petit jury composed of twelve white men. She further deposed that she was *informed* after the trial and conviction that there was systematic exclusion of qualified Negroes from jury duty in Greene County. There was no evidence in the record of the population of the two races, nor of the ratio of properly qualified Negroes as compared to properly qualified whites. The transcript is completely devoid of any proof whatsoever tending to support appellant's allegation. The affidavit sworn out by appellant's mother does not supply this proof. It was even shown at the trial that she was not a resident of Greene County, but that she lived in Jefferson County, Alabama.

The burden of proof was upon the defendant to establish the alleged racial discrimination on the ground that his rights under the 14th Amendment of the Federal Constitution were violated in that persons of his race were systematically and intentionally excluded from the jury roll and the jury box from which the grand and petit juries were drawn. Washington v. State, 269 Ala. 146, 112 So.2d 179.

No sufficient proof having been produced at the hearing on the motion for a new trial, or at any other state of the proceedings, it is clear appellant may not now complain. Therefore, we are left under no doubt that appellant's point on systematic exclusion of Negroes from the jury rolls in Greene County is not well taken.

There was some suggestion on appeal that trial counsel appointed by the lower court was inadequate to fully assert appellant's constitutional rights in view of the fact that he was a white man, and appellant was a Negro. With this we cannot agree. There is nothing in the record to indicate any inadequacy or incompetence on the part of appellant's trial counsel. We have consistently said that wide discretion must be allowed counsel in the conduct of the trial of his case and the evidence must be clear and convincing before we would ascribe to him improper motives. Clark v. State, 239 Ala. 380, 195 So. 260.

Appellant's only other argument is that the verdict of murder in the first degree with punishment fixed at death should not be predicated upon circumstantial evidence alone. This is clearly not the rule in Alabama (Hall v. State, 40 Ala. 698), so long as the circumstantial evidence is such as to produce a conviction of guilt upon the jury's mind, beyond a reasonable doubt. The rule is settled that the corpus delicti may be established by circumstantial evidence and need not be proved by direct or positive testimony. Brooks v. State, 248 Ala. 628, 29 So.2d 4. Section 314, Title 14, Code of Ala.1940, provides, inter alia:

"Every homicide * * * committed in the perpetration of, or the attempt to perpetrate, any * * * robbery * * * is murder in the first degree * * *."

If the evidence presented by the State was believed by the jury, it was

**518**

within the province of the jury to believe that appellant shot and killed the deceased while engaged in the perpetration of the crime of robbery.

■ We have held on numerous occasions that a homicide of a type falling within § 314 is murder in the first degree, giving effect to the statute. The turpitude of the crime combined with the fatal result raise the degree of the crime to murder in the first degree. Mitchell v. State, 60 Ala. 26. As for the punishment for the crime, that is properly left to the discretion of the jury, within the statutory bounds. Despite any feelings of sympathy we might entertain on appellant's behalf we must allow the jury's pronouncement to stand.

■ It is our duty where an appeal is prosecuted under the automatic appeal statute to examine all the evidence for reversible error without the necessity of seasonable objection. But upon a finding of no reversible error in the record we will affirm. Section 382(10), Title 15, Code of Ala.1940, and annotations.

We have carefully examined the entire record and are clear to the conclusion that no reversible error is made to appear.

Affirmed.

All the Justices concur.

PER CURIAM.

The appellant, a Negro, was convicted and sentenced to death for murdering a white man. The judgment here was affirmed on May 9, 1963 but on certiorari to the Supreme Court of the United States the writ was granted with opinion (May 4, 1964, 84 S.Ct. 1152, 12 L.Ed.2d 190), the judgment was reversed and the cause remanded.

■ It seems that the Federal Supreme Court, contrary to long-established legal principles (see Code of Ala.1940, Tit. 15, §§ 278, 279; Ball v. State, 252 Ala. 686, 42

So.2d 626, cert. den. 339 U.S. 929, 70 S.Ct. 625, 94 L.Ed. 1350), has reversed the cause because the trial court did not permit proof of systematic exclusion of Negroes from the jury roll in Greene County on a hearing of a motion for new trial by Coleman. The point was not raised on arraignment, nor during the trial. The rationale of the opinion would impress a legal scholar as rather sophistical.

But regardless of our disagreement with the Court's decision, we are left under no alternative but to reverse the judgment of the lower court overruling the motion for new trial and remand the cause to the Circuit Court of Greene County so that evidence on appellant's motion for a new trial may be taken.

Execution on the judgment of conviction is stayed pending final disposition of the cause on a hearing below on the motion for new trial.

Judgment on the motion for new trial reversed and cause remanded.

All the Justices concur.