191 So.2d 385

**A. C. MITCHELL**

v.

**STATE.**

**2 Div. 137.**

Court of Appeals of Alabama.

Oct. 25, 1966.

John F. Taylor, Jr., Demopolis, for appellant.

Richmond M. Flowers, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the .State.

CATES, Judge.

This appeal came on for submission August 18, 1966, on briefs.

Mitchell has noted an appeal from conviction of first degree manslaughter. The jury's verdict fixed his punishment as well as guilt. The trial judge adjudged Mitchell guilty and sentenced him, conformably with the verdict, to ten years imprisonment. Motion for new trial was overruled.

**I**

The Grand Jury accused Mitchell of killing six women by driving his truck into another truck operated by one Gibbs causing Gibbs's truck to be knocked into the car in which the six were riding. Count 2 of the indictment averred that Gibbs's "truck had just struck the automobile in which they were riding thereby knocking or driving said Gibbs's truck further into, upon or against the automobile."

October 7, 1965, about 4:15 P.M. about a mile east of Rooster Bridge on U.S. Highway 80, Mrs. Charles Panjic was driving west from Demopolis. She was following a car driven by Frances Stewart in which six other women were passengers.

She saw Mrs. Stewart slam on her brakes and swerve to the left. A large transfer truck ahead coming on from the west was forced to slow down by another vehicle.

Also coming east were Gibbs and Mitchell driving two loaded pulpwood trucks, weaving in and out of the line of traffic at a speed which Mrs. Panjic estimated at 60 to 75 miles per hour. The second truck was "real close" behind the first one. They pulled out to go around the van.

The first truck hit Mrs. Stewart's car "and flipped her up, and about that time the

other truck hit it and off down the embankment they went."

It was a clear day; the road straight and level. One of the passengers in Mrs. Stewart's car survived.

Gibbs's truck ran 124 feet after hitting Mrs. Stewart's car. Mitchell's went 78 feet after hitting both.

During the testimony of a highway patrolman, J. E. Ward, who investigated the collision, a photograph, State's Exhibit Y, was exhibited. The witness in the course of testifying admitted that this picture of Mrs. Stewart's car did not depict its condition at the time he first came on the scene.

But at page 19 of the record we find on the direct examination of witness Ward:

"Q   Is there any difference in the automobile since the time you arrived there and the time this picture was taken?

"A   There would be a slight difference on the right hand side of this vehicle between the time this picture was taken and the time I arrived.

"Q   What had been done to it, if you know?

"MR. TAYLOR: Judge, if he says there was a difference, that that picture does not depict the automobile immediately after the accident, I object to its admission.

"THE COURT: He may explain the difference.

"A   We had to use an acetylene torch to get the ladies out of the car.

"MR. TAYLOR: Your Honor, that statement is inflamatory, and we move to exclude it. The car had been changed physically since the accident and before the pictures were taken. They do not depict the automobile as it was immediately after the accident. They have no probative value, and they are introduced to inflame the minds of the jury.

"MR. BOGGS: May it please the Court, we want him to explain the difference to see whether it is admissible.

"THE COURT: Yes sir. Go ahead.

"Q   You did not have any pictures made before and while the ladies were being removed from the car, did you?

"A   No sir.

"MR. TAYLOR: Your Honor, the testimony is more damaging than the pictures, and we object.

"THE COURT: Overrule the objection.

"Q   Describe the condition of the automobile at the time you arrived there and the condition of it at the time the picture was made?

"A   When I arrived on the scene, there were five women still in vehicle number one. One was alive and was laying on the front seat penned in the car. I sent for an acetylene torch, since we couldn't get them out.

"MR. TAYLOR: We object, your Honor.

"THE COURT: He can testify what was done to it."

Mitchell, the following day, in the presence of the Highway Patrolman gave the Sheriff an inculpatory statement. Part of it reads:

"I was traveling about two truck lengths behind Johnny when we crossed Rooster bridge and entered Marengo County. About one mile east of the bridge Johnny drove up behind a transfer truck and turned left to pass it. I then saw the stop lights on a transfer truck just ahead of me. This truck had just about come to a stop. I slammed on my brakes and the right front wheel skidded but I managed to swerve to the left and dodge the transfer truck. My brakes were bad, as they had been for some time, and when I applied them with full force it made the truck switch about on the road. When

Johnny's truck struck the car he was meeting I was only about twenty five feet behind him. When Johnny's truck had knocked the car east about fifty feet I struck his truck in the rear and knocked it forty or fifty feet east. I have been driving this truck off and on for about ten months and the brakes had been good up till about three months ago. Tuesday, Mr. Joplin asked me how long the brakes had been bad on the 1964 GMC truck and I told him they had been like that ever since last winter when we were working in Mississippi. He said he was going to put it in the shop this week-end and have them fixed. Before making this statement I was informed by Sheriff T. Wilmer Shields that I did not have to make a statement, that I was entitled to an attorney and that this statement could be used against me in a trial. I told Sheriff Shields that I wanted to tell just how this accident happened and would freely and willingly give a statement as best I can as to just what happened."

The only witness for the defense was Mitchell's employer, Mr. Fred Joplin, owner of the truck which Mitchell drove. Mr. Joplin testified he had driven the truck on the same day; that the brakes were in good condition, the truck being comparatively new.

## II.

As a general observation, we begin with the first syllabus from the opinion of Simmons, C. J., in Knihal v. State, 150 Neb. 771, 36 N.W.2d 109, 9 A.L.R.2d 891:

"A photograph, when offered in evidence as proving a thing to be as represented in the picture, is not admissible as original or substantive evidence."

■ The second syllabus makes it clear that a photograph (unlike a witnessed or notarized deed) is not self proving. The court quotes from Wigmore, Evidence (3d Ed.), § 790:

"* * * It is mere waste paper * * * It can of itself tell us no more as to the existence of the thing portrayed * * than can a tree or an ox. We must somehow put a testimonial human being behind it (as it were) before it can be treated as having any testimonial standing in court.

It is somebody's testimony,—or it is nothing."

From Wigmore (ibid.), § 793:

"* * * Here, then is a form of expression ready prepared pictorially; [a witness] must supply the missing elements; in brief, it must appear that there is a witness who has competent knowledge, and that the picture is affirmed by him to represent it."

And, "A map or photograph cannot be received anonymously; * * *"—Wigmore, op. cit., supra, § 794.

■■ A photograph to be relevant must show at least in part the mise en scene or locus in quo as part of the res gestae. Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389. One taken after the offense is presumptively irrelevant and immaterial. Hamilton v. State, 43 Ala.App. 192, 186 So.2d 108 (hn. 4). This presumption, however, is only one of fact and may be overcome.

In Harris v. Snider, 223 Ala. 94, 134 So. 807, Bouldin, J., wrote:

"The plaintiff offered in evidence her photograph taken before the accident, showing a full front view of the face. On cross-examination it was developed that the photograph had been tinted and touched up by the artist. Motion was then made to exclude the photograph, because not a true likeness disclosed by scientifically accurate processes.

"Stress is laid in argument upon the fact that this photograph, thus finished-up to give emphasis to the beauty of face, when contrasted with the face appearing without artificial coloring, at the

trial, was misleading, and calculated to work injury to defendant. Certainly the photograph would aid the jury in determining the extent to which the face had been disfigured. The artificial coloring, made known to the jury as such, and not claimed to have been added after the accident for purposes of the trial, furnished no sufficient ground to exclude the photograph.

"The case of Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389, presented a different question. That case, on the whole, is authority for, rather than against, the ruling here."

The photograph · here tendered has not been altered. Rather it shows a wrecked automobile which has been altered ex post facto.

The change, however, according to the witness (who under Wigmore, supra, is indispensable to the photograph's use), occurred on the opposite side of the car from that facing the camera and to the top of the car. Accordingly, we infer from the testimony explaining the picture that a substantial part of the automobile portrayed can be viewed as the witness saw it when he drove up to the site of the collisions.

No point of objection was made that the witness arrived half an hour after the trucks hit the car. Compare Vandiver v. State, 37 Ala.App. 526, 73 So.2d 566 (hn. 4). We think it reasonable to assume, since the photograph shows the car and Gibbs's truck in the ditch, that they were in their places of rest after impact and their subsequent going off the road. We note in this regard that the highway patrolman stated that, other than possible changes from acetylene torches, raising the car's roof and the removal of the occupants, the car and truck were shown as when he first arrived.

■ If relevant, a photograph is not inadmissible merely because it can inflame. Wilson v. State, 31 Ala.App. 21, 11 So.2d 563; Thompson v. State, 39 Ala.App. 569, 105 So.2d 146; May v. State, 42 Ala.App.

401, 166 So.2d 860; Grissett v. State, 241 Ala. 343, 2 So.2d 399; Duncan v. State, 278 Ala. 145, 176 So.2d 240.

■ Where a photograph portrays both that which is relevant and that which is not, the boundary of admissibility is marked by the probable prejudice from viewing the irrelevant. In McKee v. State, 33 Ala.App. 171, 31 So.2d 656, "massive mutilation" shown in a photograph made after autopsy was hard core gruesomeness with any redeeming relevance virtually overwhelmed.

The New Jersey court says, "When * * the minute peg of relevancy will be entirely obscured by the quantity of the dirty linen hung upon it, fair play directs the exclusion * * *"—State v. Bucanis, 26 N.J. 45, 138 A.2d 739, 73 A.L.R.2d 760.

Changes which are man made, such as surgical traces or distorted focusing of cameras, seem to be more skeptically regarded than changes due to natural causes. McKee v. State, 253 Ala. 235, 44 So.2d 781.

Here we have no viewing of corpses. Cf. Eubanks v. State, 36 Ala.App. 208, 54 So.2d 82; Anno. 73 A.L.R.2d 769. The mashing of the car is cumulative but serves to illustrate the effect of the combined forces of the colliding objects, a factor for the jury to weigh in deliberating on speed, brakes and Mitchell's ability to control his truck which undisputedly was in the left lane of the road.

■ We consider that the trial judge was correct in admitting the photograph after the explanatory testimony. The alteration of the car did not prejudicially overwhelm relevance.

### III.

As to the confession, Mathis v. State, 280 Ala. 16, 189 So.2d 564, applies since Mitchell's trial began before June 13, 1966, i. e., February 11, 1966. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

■ Under the totality concept we consider that its reception was properly predicated with the presumption of involuntariness overcome.

## IV.

Mitchell's counsel excepted to part of the oral charge in the following manner:

"I would like to take exception to all of the Court's charge which says the contributing act of this defendant could be considered in determining his guilt."

■ Our practice requires that the language of the court be given either verbatim or substantially in the exception. This is needful so that the judge has the posited claim of error called to his attention.

Foregoing a rigid application of the foregoing rule, we note that the court's oral charge has two references to concurrent acts of different persons contributing to death, viz.:

"Where the deceased dies as a result of a blow received, one blow by the defendant and another blow by a third person, the jury should convict even though they believe death would not have resulted alone from the blow by the defendant; and in this case, gentlemen, it is only necessary for the State to show beyond a reasonable doubt from the evidence submitted in the case that one or more of these persons named in the indictment as having been killed in the accident did, as a matter of fact, meet their death as a result of the act of this defendant or that the concurrent act of the defendant, together with the act of another, caused the death of another person."

Another was:

" * * * it is the State's contention in this case that the act of the defendant concurring with the act of one, Johnnie Gibbs, who is alleged to have driven the first pulpwood truck, that these two acts together caused the death of these six persons. That is a matter for you to say.

You heard the evidence. It is your duty and responsibility to make up your minds and say by your verdict what are the facts in the case. If the act of the defendant on the occasion complained of was wanton or willful or if the circumstances existing at the particular time were such as to put the defendant on notice that, by his conduct, serious injury or damage or death might result to others and if this contributed to the death of these ladies or one of them or more, then it would be sufficient to meet the requirements of the law."

■ It is argued that, since there was no evidence of prearrangement making Gibbs and Mitchell joint manslayers, the State in setting up the corpus delicti had to show that the six women were all alive before Mitchell's truck ploughed into the wreck of their car and Gibbs's truck.

■ One element of felonious homicide which is overlooked in this argument is that death need not be instantaneous. The Common Law accords a year and a day from the wounding. iv. Bl.Com. 197; Howard v. State, 24 Ala.App. 512, 137 So. 532.

The Common Law indulges in no presumption as to survivorship.

■ Nor does the criminal law have a doctrine of sole proximate cause. Rather, if the wrongful act contributed in any degree to the injury, the fact that another's act also concurs is for the jury to weigh as to who was the actor, either or both.

Here, under the evidence, the jury also could reasonably infer that Mitchell was blindly following Gibbs. Gibbs thus became the lookout for them both. In view of their speed and closeness together—"two truck lengths"—the two trucks operated as much articulated as the cars of a railroad train.

■ The verb "tailgate" has entered the language to signify driving one motor vehicle too close behind another. Some states, e. g., Kentucky and Tennessee, have

statutes requiring trucks to space themselves 300 feet apart on the open road. Such a rule is but one of prudence which might agree with the experience of jurors in weighing a case such as this.

■ Where concurrent causes operate to shorten life, the burden is on the State to convince the jury beyond a reasonable doubt that the agency of the defendant materially contributed either to the deceased's death or to accelerating it.

■ Put another way, if the death is shown to be "solely and exclusively" due to natural causes, accident or suicide, the defendant's act must be viewed as though the victim were still alive at the time of indictment. Duncan v. State, 30 Ala.App. 356, 6 So.2d 450.

Warren on Homicide (Perm. Ed.), § 59, Cause of Death, says in part:

"It is not essential that the injury inflicted by the accused be the sole cause of the death. * * *"—citing Huckabee v. State, 159 Ala. 45, 48 So. 796.

Mr. Justice Lawson, in a case where two men, defendant Stokley and another, i. e., Pete Singley, had both, in possible separate encounters in a stretched out fight, hit deceased on the head with a stick, Stokley v. State, 254 Ala. 534, 49 So.2d 284, wrote:

"If the jury believed from the evidence beyond a reasonable doubt that defendant struck deceased as charged and that such blow was a dangerous blow and contributed to the death of deceased, then the defendant would be guilty of the homicide, notwithstanding the jury may not have believed that the death would have inevitably followed from that blow alone, and notwithstanding they may not have believed that there was any preconcert or community of purpose between defendant and Pete Singley. * * *"

■ Here we take it that defense counsel's objection was addressed to that phase of the quoted portions of the oral charge relating to the tendency of the evidence showing Mitchell's contributing to the death of one or more of the six deceased.

Under *Stokley*, supra we hold that this part of the charge was correct. No exception was taken to the use of the expression "the jury should convict," etc., without their deliberation being hypothesized upon a consideration of all the evidence.

As to whether or not portions of the oral charge conflicted with certain of the given charges devolves on the extent of our review.

■ Code 1940, T. 7, § 273, requires "the judge to write 'given' or 'refused' as the case may be * * * and sign his name thereto; which thereby becomes a part of the record." The absence of such an endorsement is as fatal to the validity of a purported charge as is the lack of a ticket agent's stamp on a railroad ticket.

■ The written charges in the record before us have only a general caption without any legend to show that the judge himself did or did not approve them. Cook v. State, ante p. 304, 189 So.2d 595; Strickland v. State, 269 Ala. 573, 114 So.2d 407 (hn. 11); Bearden v. Louisville & N. R. R. Co., 272 Ala. 568, 132 So.2d 757.

■ This is an interpretation of a local practice laid down by the Legislature. We are required by statute, Code 1940, T. 13, § 95, to follow such constructions made by our Supreme Court.

V.

■ As demanded by Code 1940, T. 15, § 389, we have carefully reviewed the entire record and consider that no errors appear therein to the probable prejudice of any substantial right of the defendant. Supreme Court Rule 45. This case was essentially one for a jury.

The judgment below is

Affirmed.