199 So.2d 861

**Edd CHAPMAN**

**v.**

**STATE.**

**8 Div. 80.**

Court of Appeals of Alabama.

May 23, 1967.

Ralph E. Slate, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment charged murder in the first degree. Defendant was found guilty of manslaughter in the first degree. Punishment was fixed at imprisonment in the penitentiary for five years.

The tendencies of the evidence set out in appellant's brief, admitted as correct in the attorney general's brief and borne out by the record, are as follows:

"The State's evidence tended to show that on or about the 13th day of August, 1965, at a cafe in Morgan County, Alabama, Edd Chapman shot and killed Adolph R. McComb. The State's evidence further tended to show that an argument occurred between the defendant and the deceased inside the cafe, that it continued on outside the cafe, and that the defendant drew a pistol and shot the deceased.

"The defendant's evidence tended to show that prior to the shooting the deceased had been hostile toward the defendant. That on occasions the deceased had made threats against the defendant. That they got into a struggle on the outside of the cafe, and that the nineteen year old deceased while struggling with the sixty-seven year old defendant, the deceased had the defendant down on the ground. That the defendant pulled the pistol from his overalls and in the struggle the defendant shot the deceased in self-defense."

The evidence was sufficient to sustain the verdict. The motion for a new trial on that ground was properly overruled.

Dr. Vann V. Pruitt, Jr., a State Toxicologist, after stating his educational background, training and experience, testified he had performed more than a thousand autopsies or post mortem examinations of bodies of homicide victims, at least one-third of which involved gunshot wounds; that he performed an autopsy to determine the cause of death of Adolph McComb; that death was caused by a hemorrhage produced by a gunshot wound inflicting in the back resulting in damage to the major vessels supplying the right lung; the point of entry of the bullet was in the back, exactly along the midline at the level of the fifth thoracic vertebra; the bullet recovered from the body was fired from a .38 Calibre pistol; the body was undressed when he saw it and he did not examine the clothing for powder burns; that he examined the body and the flesh and it did not reveal the presence of powder burns; that he is trained in the field of ballistics; that he received from the coroner a .38 Calibre Smith and Wesson revolver; that his training and experience include conducting experiments and analyses of contents of powder commonly used in formulating cartridges and the study of peculiarities of powder burning; that based on his experience, knowledge and training it was his opinion that if the pistol had been fired within three or four inches from the body there would be the effects of burning residue and debris in and around the wound, and that he saw no residue in and around the wound.

We are of opinion that the witness qualified as an expert in the use of firearms and there was no error in allowing him to testify as to his opinion that if the gun were fired within four inches of the deceased there would have been powder burns on the body. Straughn v. State, 270 Ala. 229, 121 So.2d 883; Washington v. State, 269 Ala. 146, 112 So.2d 179.

Appellant insists that the cumulative effect of prejudicial matters injected into the cause by the state's attorney requires a reversal of the judgment. The argument as to one of these incidents is that "the solicitor accused defense counsel of trying to distract one of the witnesses for the State. This was an uncalled for remark and action on the part of the solicitor and

imputed misconduct on defense counsel." The record reveals the following:

"MR. HUNDLEY: Could we have order from this giggling section back here?

"THE COURT: Well, now I didn't hear it. Let's not have any demonstration of any kind, laughing or otherwise. If something appears to be humerous, you just keep it to yourself if you will."

The record shows the solicitor continued the questioning of the witness for two and a half pages when the following occurred:

"Q. All right. The argument between Edd and Adolph came on out into the dancing room?

"A. Yes, sir.

"Q. Tell the jury what happened then. Mr. Slate, are you trying to distract this witness?

"MR. SLATE: We move for a mistrial. I think that is the most uncalled for thing; make a section quit giggling. We move for a mistrial in this case.

"THE COURT: Overruled. I did hear some giggling, but at the time I made the statement I didn't. It could have been that I missed it. I cautioned the witnesses about that. I haven't heard that since. Let me say this: if you gentlemen have an objection, lct's make it to the court.

"MR. HUNDLEY: I didn't want to object until I knew what his answer was, Your Honor. I thought I could have been mistaken; might have been.

"THE COURT: Well, any remarks by the State Solicitor to the Defendant's Attorney, or to the State Solicitor by the Defendant's Attorney is not proper, and you gentlemen make your objections to the Court and I will rule as promptly as I can.

"MR. SLATE: Perhaps, Your Honor, I was moving unintentionally. I will sit down.

"THE COURT: You are welcome t·) move any where you want to as long as it doesn't interfere with the course of the trial. You know that. Let's continue now."

State's witness, Robert Love, an eye wit · ness to the killing, who testified he was fifteen years old and was deceased's brother answered a question before the court could rule on defendant's objection. The objection was sustained and defendant moved to exclude the answer. The following occurred:

"THE COURT: That is out. Don't consider that. I say to the witnesses, don't answer if you hear me say 'sustained.' If I say 'overruled' when somebody objects you can answer. Do you understand it, Robert?

"MR. HUNDLEY: Don't answer now if somebody objects until the Judge passes on it, and I will nod my head or tell you whether or not the Judge says you can answer."

During the cross examination of this witness, several pages further along in the record, the following appears:

"Q. Before the shooting, had you ever heard you brother say he was going to kill Edd?

"MR. HUNDLEY: We object.

"THE COURT: Sustained.

"A. No, sir.

"THE COURT: No, don't answer.

"MR. HUNDLEY: Judge, that was my fault. I told him I would give him a motion whether to answer or not.

"THE COURT: If I say 'sustained' don't answer the question.

"MR. HUNDLEY: Well, he looked at me.

"THE COURT: Do you remember that if I say 'sustained' don't answer.

"MR. SLATE: Now, Your Honor, we believe that is highly irregular and improper for a witness to be depending on his answer from the solicitor.

"THE COURT: I told him what to do. That is what governs it. When a question is asked by anybody, and the question has an objection, you wait until I say 'sustained' or 'overruled,' do you hear me. If I say 'sustained' you don't answer. Do you understand that?

"A. Yes, sir.

"THE COURT: If I say 'overruled,' go ahead and answer.

A. Yes, sir.

"THE COURT: All right.

Q. What did your brother do in that dance room after he came out of the little room? Look at me for a change, here, when I'm talking to you.

"MR. HUNDLEY: We object to that.

"THE COURT: Sustained.

"MR. SLATE: That is asking—the solicitor gives him a nod when he answers.

"MR. HUNDLEY: That was bona fide.

"THE COURT: I will sustain the objection to that. That was bona fide the the solicitor stated. The solicitor stated some hour or so ago with this witness, who is a 15 year old boy, and I'm saying this for the record, what was meant by this objection business and sustaining and so on. He said that he would try to nod to him so if I said 'overruled' he would understand that was when he could answer; however, in view of your objection I will say not that the witness should answer when I say 'sustained' don't answer, but I don't think there was any irregularity or such on the part of the solicitor, but if ya'll have an objection about the way people are testifying or about the way the other side is treating you, you all know how to do it;

make your objections known to the Court and not to each other.

"MR. SLATE: Now, Your Honor, I take exception and would like an exception in the record to an objection by the solicitor and sustaining by the Court when I asked this witness to look at me when I asked him a question.

"THE COURT: Well, I sustained that and it is for the Court to tell the witness what to do about looking at people and speaking up and so on because I govern the proceedings. That is why I sustained his objection, but if a witness—I can not tell which way the witness is looking. If he is not looking at you I will ask him to, but now I don't know that I can require any witness to look in any direction. I will ask him when there is a question by Mr. Slate, who is asking you questions now, please look at him or at the jury. Really, the witnesses ought to look at the jury. It is the jury the witness is telling the answer to."

Other incidents complained of are that the solicitor raised a collateral issue by repeated questioning of two witnesses about whether liquor was sold at Edd Chapman's establishment where the killing was alleged to have taken place.

These incidents occurred during the cross examination of defendant's witnesses Beula Chapman and Mary Love. Objections were sustained to several of the questions. Negative answers were given by the witnesses as to whether they had ever seen any whiskey drunk about the premises or whether it was sold there. Stephens v. State, 250 Ala. 123, 33 So.2d 245; Johnson v. State, 260 Ala. 276, 69 So. 2d 854.

During the solicitor's argument to the jury defense attorney objected to the following statements:

"If that boy had any liquor it was that man's fault right there," (pointing to defendant.)

Objection was sustained and statement was excluded from the jury. Motion for mistrial was overruled.

> "It is not like it use to be out there; a production line of drunks, a production line of thieves out there."

Objection was sustained, jury instructed to disregard the statement. Motion for mistrial overruled.

To statement by deputy district attorney with reference to defense witness Robert Earl Love:

> "We have seen his statement. We had him before the grand jury. He might have forgot what he said under Oath. Mr. Hundley and I know what he said. Mr. Hundley and I had a state subpoena issued for him and this is the first time Mr. Hundley and I heard this back pocket story."

The solicitor properly withdrew the statement and the court excluded it from the jury and instructed the jury to disregard it. Motion for mistrial overruled.

Objection was made to the statement by the solicitor:

> "For he could have done what you and I would have done had he been in a position, but he wasn't in no position to call the law out there,"

referring to defendant. Objection was sustained and the statement was excluded from the jury. Motion for mistrial denied.

We cannot predicate error because of the possible cumulative effect of questions to which objections were sustained or to which answers were given which were favorable to defendant. Peyton v. State, 40 Ala.App. 556, 120 So.2d 415.

We are of opinion the various remarks of the district attorney were not so grossly improper and prejudicial that their harmful effect could not be eradicated by the sustaining of objections and the trial court's instructions to the jury to disregard them.

Under the testimony the defendant might well have been convicted of a higher degree of homicide. In view of the verdict of voluntary manslaughter rather than murder, and the amount of punishment imposed, we are not prepared to say that, the defendant was prejudiced in any substantial right by the above incidents, separately or collectively.

Affirmed.

JOHNSON, J., recuses self.