214 So.2d 862

**Luther R. McALLISTER**

v.

**STATE.**

**4 Div. 598.**

Court of Appeals of Alabama.

Oct. 15, 1968.

Wm. G. Hause and Jere C. Segrest, Dothan, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

This case was originally assigned to Judge Cates.

In the opinion prepared by Judge Cates there is a statement of the facts which sets out various incidents and remarks of the District Attorney during the course of the trial, the cumulative effect of which, in his opinion, created such an ineradicable atmosphere of prejudice and bias against the appellant as to deprive him of a fair and impartial trial.

■ The District Attorney's remark as to appellant's former "affluence" was no concern to the jury and was, therefore, improper. However, I am not convinced after reading the record that the remark as worded was so improper and prejudicial to the appellant that any harmful effect resulting therefrom was not cured by the admonition and instructions of the trial judge.

I note that the objection of the defense counsel was sustained and that the trial court instructed the jury to disregard the remark. Chapman v. State, 43 Ala.App. 689, 199 So.2d 861; Troup v. State, 32 Ala. App. 309, 26 So.2d 611.

■ In such situations the trial judge, who sits in the arena of action, is in a much better position to determine whether a remark such as the one made by the District Attorney was so prejudicial as to be ineradicable through instructions by the court.

■ There are several instances of improper questions and statements contained within the record. However, in considering them, I do not find that their cumulative effect created an ineradicable atmosphere of prejudice and bias toward the appellant. In each instance, the court made a proper ruling and, where necessary, it seems to have impressively admonished the jury to disregard those statements which were regarded as improper. *Troup, supra.*

The remarks set out in Blue v. State, 246 Ala. 73, 19 So.2d 11, which resulted in damage to appellant, in my opinion, are far more numerous and severe in their cumulative effect than those in the case at bar. Among these are the remarks of the prosecuting attorney made in a spirit of zeal in the discharge of his official duties criticizing the appellant's son for testifying as a witness for his father. These remarks were within themselves so improper as to border on creating grounds for a mistrial.

A judicial trial is a product of human efforts and achievements and is, therefore, subject to the frailties and imperfections that "flesh is heir to". It is axiomatically true that it cannot always be free of all error. For this reason, the law yearns for, but does not expect nor require, perfection. However, the law is strict in its demand that the trial judge cause the proceedings to be so conducted as to not transgress the defendant's right to a fair trial. I am of the opinion that in the case at bar, the action of the trial court should not be disturbed.

The judgment in this cause is due to be and the same is hereby

Affirmed.

PRICE, P. J., concurs in the judgment of affirmance only.

CATES, J., dissents.

CATES, Judge (dissenting):

Appeal from conviction on indictment for robbery; sentence, ten years imprisonment.

I.

The indictment named appellant (and his coindictee) thus—"Luther R. McAllister and Patricia Brewer, whose names are to the Grand Jury otherwise unknown. * * *"

To this allegation defense counsel pled misnomer, asserting that (1) the defendant's true name was "Luther S. McAlister, II"; and (2) the Grand Jury knew or should have known of this true name because of Appellant's signing (before being indicted) an appearance bond using said alleged true name. See Form No. 4, Code 1940, T. 15, § 288.

The State filed demurrers to this plea to the effect that the plea was not filed until after arraignment and the appellant's having entered a plea of not guilty. A motion to strike was made on the same grounds. Later the District Attorney filed added grounds of demurrer.

The court below sustained the demurrer without specification of which ground was considered apt. In this posture the ruling is ascribable to any one or more of the demurrers.

The demurrer put in issue the validity of the plea. Carter v. State, 21 Ala.App. 406, 108 So. 642. In Coleman v. State, 276 Ala. 513, 164 So.2d 704, the Supreme Court went into the merits of a motion for new trial based on a not-theretofore-raised ground going to the validity of the indictment. Doubt thereby seems cast on the former rule that all pleas to an indictment other than the general issue must be filed before pleading to the merits. See Michel v. State of Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83, which should be read in the light of Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77.

Nevertheless, the State's demurrer could have been sustained on the principles of idem sonans, and that middle initials and suffixes such a "II" and "junior" are no part of one's name for the purposes of pleading.

## II.

The State's evidence tended to show a variation of the badger game. One night James Lee was lured by Patricia Brewer to a rural section after promising her $5.00 and a drink. As she parked the car, the appellant appeared from the back seat. On Patricia Brewer and Lee's changing to the back seat, McAllister informed Lee that she was his, McAllister's wife. Whereupon he pulled Lee from the back seat, threw him on the ground, and in the course of the struggle took Lee's money, $45.00, from his "right front pocket."

The defense explanation put an innocent gloss on the rustic tryst and Lee's losing his money through his own neglect.

## III.

The first point appellant argues is that because of a cumulation of improprieties, the court below should have granted his motion for new trial.

### A.

In cross-examination of the defense witness, Patricia Brewer, the following is noted:

"BY MR. BAXLEY:

"Q Did you make an offer to Joe Frank Lee to give him back the money you all robbed from him if he would drop the warrant?

"MR. SEGREST: We object to the use of the word 'robbed'.

"THE COURT: I sustain the objection to that question.

"MR. SEGREST: We request a mistrial at this time, if the Court please. You told him that was an improper question before he asked it.

"THE COURT: The Court denies your request for a mistrial. The Court is going to instruct the Jury not to consider the word 'robbed' in that question, and I will sustain the objection to that question, Mr. Baxley.

"MR. SEGREST: Then, we move to exclude it, please, sir.

"THE COURT: It is excluded. The Court excludes that from the Jury."

There was no error in denying this motion for mistrial.

### B.

Record page 104, during appellant's examination in chief, shows:

"Q Who did you speak to there at Fort Rucker?

"A Sgt. Hernandez. I didn't go into detail, but I told him I wanted to speak to my Platoon Sergeant.

"Q Did you speak to him?

"A Not at the present time, but I spoke to the next leading man.

"MR. BAXLEY: May it please the Court, we are not trying him for being

A.W.O.L. from the Army. We object to going into all of this. It doesn't have anything to do with the robbery.

"MR. SEGREST: We object to the word 'robbery'. Judge he has done this through the whole trial.

"THE COURT: Yes, I am going to sustain the objection as to this line of questioning, Mr. Hause and Mr. Segrest, and I will ask the Jury to disregard the remark of 'robbery' that was made. Go along."

We note that here the court not only sustained the objection but also charged the jury to disregard the District Attorney's conclusionary remark.

### C.

Next we are shown further cross-examination of the appellant at Record page 111 where the following appears:

"Q Have you ever been Court-Martialed?

"A No, I haven't.

"Q You haven't been Court-Martialed twice?

"A No, one time.

"Q Didn't you just testify you hadn't been Court-Martialed at all?

"MR. SEGREST: We object, your Honor.

"THE COURT: Sustain the objection as to whether he has been Court-Martialed. Go ahead."

In this, we bear in mind that no objection was interposed to the first question, "have you ever been Court-Martialed?" And also the trial judge sustained the objection made later.

### D.

Early in the trial, on redirect examination of one of the officers who arrested McAllister, we find the following:

"BY MR. BAXLEY:

"Q Could the reason be—I believe Mr. Segrest said could the reason be that he didn't give a statement was because you didn't ask him. That is what he asked you, is that right?

"A Yes, sir.

"Q Could it be that the reason you didn't ask him is because the Federal Court Rules won't let you ask him—

"MR. SEGREST: Now we object to that as highly improper.

"THE COURT: I sustain the objection.

"MR. BAXLEY: We will withdraw it. * * *"

We recognize the rather widespread unpopularity of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. Indeed, a respectable number of State court judges, as well as the Congress of the United States, consider that the majority of the Supreme Court of the United States in those cases have thrown the baby out with the bath water.

The prosecution's using this counter-irritant, which after all cannot be attributed in any degree to McAllister, to reinforce the heinousness of an indictment, puts the defense in a two front war. However, not only did the court sustain the objection but also the District Attorney explicitly withdrew the question.

We consider that no reasonable juror would have held any prejudice against the defendant after such a sustention and disavowal.

### E.

The most serious question ruled on by the trial judge while McAllister was cross examined arose as follows:

"BY MR. BAXLEY:

"Q Luther, you say that is an imported suit or, all wool, is that right?

"A Yes, sir.

"Q You say you had a white Buick convertible?

"A I did.

"Q And yet you told this Court you were an indigent—

"MR. HAUSE: We object to that.

"THE COURT: I sustain your objection.

"MR. SEGREST: We want a hearing out of the presence of the Jury.

"THE COURT: All right. Now I am going to let the Jury go to the Jury Room, and while you are in the Jury Room, do not discuss this case among yourselves nor allow anyone to discuss it with you while you are out. (Jury was excused from the Courtroom and the following proceedings were taken outside the presence of the Jury.)

"MR. HAUSE: The record shows that this Court appointed us to represent this defendant as an indigent, your Honor. It is not a matter of inquiry for the District Attorney or the State of Alabama to go into after the Court has already judicated and made it known that this was an indigent, and we were appointed to represent him as an indigent, and we are here representing him as an indigent, and it is not proper inquiry for the State to make before the Jury as to whether he has got an automobile or not, or what kind of car he has got, or whether he has got an imported suit or not, and we respectfully request a mistrial.

"MR. SEGREST: Judge, the District Attorney in this case has done everything within his power to prejudice this Jury against this boy. He has called him a robber on several occasions, and we have objected to it, and it was then excluded from the Jury, and we are saying that the cumulative effect of his attitude during the whole case is to prejudice this Jury, because he doesn't have any evidence to convict this boy, and he is fighting fire with fire and he is prejudicing this Jury, and I don't think we can get a fair trial now.

"MR. BAXLEY: May it please the Court, my opposition on this—this indigent question is brand new. There is no law on it. We feel—we don't think it would be admissible ordinarily in a case, but we feel that when a person takes the stand, and he puts his character in issue, and his credibility in issue, and he has property, when he has told the Court that he was an indigent and had none, and that and the fact that he has a job affects his credibility as a witness, and we asked for the purpose of attacking his credibility as a witness to show that he has property and yet the State is having to pay his lawyers, and that is the purpose for which we are introducing this. We would have introduced it had he not taken the stand and testified.

"THE COURT: The Court is not going to allow you to go in to whether or not— anything in regard to his being an indigent defendant. The Court has already adjudged him so and appointed him lawyers to represent him. At the time the Court did that, the Court made inquiry into his financial condition at that time, and I don't think it is a proper question. I am going to deny your motion for a mistrial.

"MR. SEGREST: Note our exception.

"THE COURT: Now let's go along.

"MR. BAXLEY: May it please the Court, we offer this solely for impeachment purposes.

"THE COURT: I have made the ruling of the Court. Mr. Bailiff, bring the Jury back in.

"(Whereupon the Jury returned to the Courtroom and the following proceedings were had before the Court and the Jury.)

"THE COURT: Gentlemen of the Jury, I instruct you not to consider any testimony or anything that you heard in regard to the defendant being an indigent defendant in this case. Do not consider that when you go to make up your verdict in this case. Now, go ahead."

The mistrial moved for should have been granted. The appellant's former affluence was completely irrelevant to the factual issues to be decided by the jury.

Besides their irrelevance, the references were appeals to prejudice against the public expenditure for court appointed counsel and the possible further expense to the State under either the Automatic Appeal Act, or Act No. 525, September 16, 1963.

### F.

The principle of cumulative harm relied on in Blue v. State, 246 Ala. 73, 19 So.2d 11, furnishes an alternative ground for reversal here, even where the trail judge ruled with the defendant or charged matter out from the jury's consideration. The motion for new trial raised these points.

### IV.

In view of another trial, we point out that defendant's charge 6 which reads,

> "The Court charges the Jury if after considering all the evidence in this case, that tending to show guilt, together with that tending to show innocence, there should spring up involuntarily in the minds of the Jury from any part of the evidence a probability of the innocence of the defendant, the Jury must acquit him."

should have been given. Sanford v. State, 37 Ala.App. 603, 75 So.2d 109 (Charge I) : Holtbrook v. State, 38 Ala.App. 77, 76 So.2d 349; Earnest v. State, 40 Ala.App. 344, 113 So.2d 517 (Charge 13); Lockett v. State, 40 Ala.App. 427, 117 So.2d 155 (Charge 11); Tidwell v. State, 40 Ala.App. 580, 118 So.2d 292; Johnson v. State, 42 Ala.App. 511, 169 So.2d 773 (Charge 7); and Lanier v. State, 43 Ala.App. 447, 192 So.2d 256.

Ordinarily we would reverse for the refusal of this charge alone but a technicality stays our hands.

Code 1940, T. 7, § 273, requires "the judge to write 'given' or 'refused' as the case may be * * * and sign his name thereto; which thereby becomes a part of the record." The absence of such an endorsement is as fatal to the validity of a purported charge as is the lack of a ticket agent's stamp on a railroad ticket.

The written charges in the record before us have only a general caption without any legend to show that the judge himself did or did not approve them. Cook v. State, 43 Ala.App. 304, 189 So.2d 595; Strickland v. State, 269 Ala. 573, 114 So. 2d 407 (hn. 11) ; Bearden v. Louisville & N. R. R. Co., 272 Ala. 568, 132 So.2d 757.

This is an interpetation of a local practice laid down by the Legislature. We are required by statute, Code 1940, T. 13, § 95, to follow such constructions made by our Supreme Court. Mitchell v. State, 43 Ala.App. 427, 191 So.2d 385.

The writer believes that this case should be an exception. This is an instance of court appointed counsel, overworked and underpaid. To require them to proofread behind the circuit clerk (now deceased and beyond reach of action under Code 1940, T. 13, § 203) is a burden not contemplated by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. Moreover, the State does not raise the point of the lack of the judge's endorsement.

The judgment below should be reversed and the cause remanded for new trial.