McMILLAN, Judge.
The appellant was found guilty of sexual abuse in the first degree, in violation of § 13A-6-66, Code of Alabama (1975), and burglary in the second degree, in violation of § 13A-7-6(b), Code of Alabama (1975). He was sentenced to seven years’ imprison *214 ment for each of the charges, the sentences to run concurrently.
I
The appellant argues that the prosecutor’s question regarding the details of the appellant’s prior conviction constituted reversible error. The record indicates that the following transpired during the prosecutor’s cross-examination of the appellant:
“[Prosecutor]: ... [The defense counsel] asked you on direct examination if you had been convicted of a crime before; is that correct?
“[Appellant]: Yes, ma’am.
“Q: And he asked you what crime that was, and your response was ‘pretty much the same thing.’
“A: Yes, ma’am.
“Q: Indeed, the charge was sexual abuse in the first degree; is that correct?
“A: Right.
“Q: In which the victim was a twelve-year old girl?
“[Defense Counsel]: Judge, I object to that.
“THE COURT: Sustained.
“[Prosecutor]: May we approach the bench?
“THE COURT: Objection is sustained.
[[Image here]]
“[Defense Counsel]: For the record, we would make a motion for mistrial based on the conduct of the prosecutor in asking that last question, which was objected to and sustained.
“THE COURT: Motion is denied.”
Immediately thereafter, the trial court instructed the jury as follows:
“Ladies and gentlemen, you will be instructed to disregard the last question made by the assistant district attorney. Is there anyone who feels that they cannot do that?
“(No response)
“THE COURT: All right; thank you. Denied. Ask your next question.”
The prosecutor's question concerning the specifics of the appellant’s prior conviction was not so harmful as to be ineradicable. The trial court’s action in sustaining the objection, excluding the remark, and promptly admonishing to the jury to disregard it served to cure the possible prejudice to the appellant. Brooks v. State, 462 So.2d 758, 760 (Ala.Cr.App.1984).
“A motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by the trial court’s instructions to the jury. Nix v. State, 370 So.2d 1115, 1117 (Ala.Crim.App.), cert. denied, 370 So.2d 1119 (Ala.1979); see also Carroll v. State, 440 So.2d 343 (Ala.Crim.App.1983), cert. denied, [465] U.S. [1032], 104 S.Ct. 1299, 79 L.Ed.2d 698 (1984). It is clear that when improper comments are made by counsel concerning the commission of other offenses by an accused, such comments are capable of being eradicated from the jury’s consideration by prompt action of the trial court. Nathan v. State, 436 So.2d 19 (Ala.Crim.App.1983); Floyd v. State, 412 So.2d 826 (Ala.Crim.App.1981); Diamond v. State, 363 So.2d 109 (Ala.Crim.App.1978).”
Reeves v. City of Montgomery, 466 So.2d 1041, 1045 (Ala.Cr.App.1985).
“It is the basic premise that when prejudicial remarks have been made the trial judge is in a better position than is an appellate court to determine whether the remarks were so prejudicial as to be ineradicable. Favor v. State, 389 So.2d 556 (Ala.Cr.App.1980), Chambers v. State, 382 So.2d 632 (Ala.Cr.App.), cert. denied, 382 So.2d 636 (Ala.1980); McAllister v. State, 44 Ala.App. 511, 214 So.2d 862 (1968). There is, moreover, a ‘prima fa-cie presumption against error where the trial court immediately charges the jury to disregard the prosecutor’s remarks.’ Favor v. State, at 561, quoting from Chambers v. State, supra.”
Kendrick v. State, 444 So.2d 905, 909 (Ala.Cr.App.1984).
II
The appellant argues that statements made by him to his wife and the prosecu-trix’s mother were inadmissible. The record indicates that prior to trial, the defense counsel made a motion in limine spe *215 cifically to exclude a prejudicial statement “allegedly made by the wife of the defendant during a confrontation between the prosecuting witness’ mother, [name omitted], and the defendant.” (Quoting from the defense counsel’s motion in limine.) The following occurred during the oral motion in limine made by the defense counsel:
“THE COURT: Before we get started with the trial, the defendant has filed a motion in limine that let’s take up at this time. What statements would you be specifically referring to?
“[Defense counsel]: Judge, as I understand it, there was a statement by the defendant’s wife, and I do not recall the exact wording. According to the prosecution witness, the wording was something to the effect: ‘I told you to stop messing with young girls.’ That is a statement that was made by the defendant’s wife, not by the defendant, and we don’t think it’s admissible, we think it’s hearsay, we think it’s irrelevant.
“THE COURT: Well, in your motion here you say that there’s a confrontation between the prosecuting witness’ mother [name omitted], and the defendant. So were all three people present?
“[DEFENSE COUNSEL]: As I understand it, yes, sir.
“THE COURT: All right.
“[DEFENSE COUNSEL]: Judge, specifically, the only way I think there would be any question of admissibility would be under a tacit admission type of doctrine, which has been struck down by the U.S. Supreme Court as being unconstitutional, and with that removed it’s just pure hearsay.”
The motion was subsequently denied and, during the direct examination of the prosecutrix’s mother, the following transpired:
“A: I just kept walking on to him. And she went with me. I went up to him. I was really upset; I was hysterical. I said, T hear that you went into my house. You put your hands on my daughter.’
“Q: And what if anything did the defendant say?
“A: He said, ‘I’m sorry.’
“Q: Did he say anything else?
“A: He said — well, I said something else.
“Q: What did you say then?
“A: I said, ‘If you ever come in my house again and put your hands on my daughter I’ll kill you.’
“Q: What if anything did he say?
“A: He said, ‘I’m sorry.’ He said it twice. He said, T won’t even holler at her or whistle any more when she goes to the mailbox.' He said, ‘I’m sorry.’
“Q: What if anything happened next? Well, let me ask you this. How far were you from Mr. Reynolds at the time this conversation took place?
“A: I had walked all the way up to him then.
“Q: How many feet would you say were between you and Mr. Reynolds?
“A: Two, three feet.
“Q: Were you speaking in a loud voice?
“A: Yes, ma’am.
“Q: And his reply to your statement was what, please, ma’am?
“A: He said, Tm sorry.’ He said, ‘I’m sorry,’ twice. He said, T won’t do it any more.’ And he said, T won’t even holler at her or whistle when she goes to the mailbox.’
“Q: What if anything happened then?
“A: I told him, I said, ‘You walk into my house and put your hands on my daughter, and all you can say is, “I’m sorry,”?’ And he said it again, he said, ‘I’m sorry.’
“Q: And then what happened?
“A: I told his wife, ‘If he comes to my house again you’re going to have to bury him.’
“Q: Where was his wife at the time?
“A: She was standing there with him.
“Q: Approximately how far was she from the defendant?
“A: Two, three feet.
“Q: What was the manner of her speech?
“A: She was calm. I said, ‘If he comes to my house again and puts his hands on my daughter, I’m going to bury him.’ That’s what I said. And she said, ‘No, ma’am — ’
*216 “[DEFENSE COUNSEL]: Judge—
“A: ‘—You won’t have to. I will.’
“[DEFENSE COUNSEL]: —Once again I would object to what any other person said. It’s hearsay, and for reasons assigned previously in our motion.
“THE COURT: As to that particular response, objection is sustained.”
“Q: [PROSECUTRIX’ MOTHER]: Let me ask you—you said that she was within three feet of her husband?
“A: Yes, Ma’am.
“Q: The tone of her—not the tone of her voice but the volume, how was she speaking?
“A: She got loud.
“Q: She got loud. Loud enough to be heard by the party standing right there? “A: Yes, Ma’am.
“Q: What if anything did she say at that time to the defendant?
“A: She said, T told you to stay away from—’
“[DEFENSE COUNSEL]: Judge—
“A: ‘—from these young girls.’
“[DEFENSE COUNSEL: —Once again I’m going to object, for the same reasons.
“THE COURT: Objection overruled.
“Q: I’m sorry; if you would answer the question, please, Ma’am, what if anything did she say to the defendant?
“A: She said, T have told you to stay away from these young girls.’
“Q: And what if anything did the de- . fendant do?
“A: He said, ‘I’m sorry,’ to her. She said, T need to talk to you personally.’ ”
The testimony as to the appellant’s response of “I’m sorry,” to the victim’s mother was not preserved for review because the appellant failed to object to that testimony. The motion in limine specifically referred to the statement made by the appellant’s wife and his response thereto. The appellant also did not object to the victim’s testimony concerning her statements to the appellant and his responses thereto. See Brown v. State, 481 So.2d 1191, 1195 (Ala.Cr.App.1985).
The appellant’s statement, “I’m sorry,” made in response to the accusatory remarks by his wife, constituted a tacit admission and was admissible.
“A response by the accused to the accusatory statement which evades the accusation in such a manner as to impliedly concede its truth is admissible under the present exception [the tacit admission rule].”
C. Gamble, McElroy’s Alabama Evidence (3d ed. 1977), § 193.01(2).
“An evasive or unresponsive reply to an incriminatory or accusatory statement is tantamount to silence, in which case the statement and the reply are admissible as an admission of the statement’s truth.”
C. Torcia, Wharton’s Criminal Evidence (13th ed. 1973), § 701. See also Pruitt v. State, 457 So.2d 454, 456 (Ala.Cr.App.1984), cert. denied, 457 So.2d 456 (Ala.1984) (identification of property by appellant’s wife in his presence which was not denied by him, held admissible); Barton v. State, 376 So.2d 756, 760 (Ala.Cr.App.), cert. denied, 376 So.2d 761 (Ala.1979) (statements made by co-conspirator in appellant’s presence and not denied by him, held admissible). The appellant’s statement “I’m sorry” served not only as a failure to deny his wife’s accusatory statement, but further demonstrated a consciousness of guilt.
Even if the admission into evidence of the appellant’s response to his wife’s statement had been found to constitute error, the error would be harmless, as it was merely cumulative of the appellant’s response “I’m sorry” to the statements made by the victim’s mother. See Beavers v. State, 497 So.2d 612, 617 (Ala.Cr.App.1986); Hammond v. State, 502 So.2d 843, 845 (Ala.Cr.App.1986), cert. denied, Hammond v. Alabama, — U.S. -, 107 S.Ct. 3193, 96 L.Ed.2d 681 (1987); Jackson v. State, 502 So.2d 858, 866 (Ala.Cr.App.1986).
AFFIRMED.
All the Judges concur.