24 So.2d 142

### MOUNT v. STATE.

4 Div. 881.

Court of Appeals of Alabama.

Dec. 18, 1945.

E. O. Baldwin, of Andalusia, for appellant.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The appellant was indicted for murder in the first degree and convicted of manslaughter in the first degree. He was sentenced to imprisonment in the penitentiary for ten years. From the judgment of conviction and sentence rendered thereon he prosecutes this appeal.

The appellant and his wife Olene lived next door to the deceased Rosa Lee Burnett and her husband Judge Burnett in Lock's quarters in Andalusia, some 21 feet separating the two houses which faced Lock Street. The families had so lived for some five or six years, and had always been on good terms. On the night of 29-30 April the appellant, his wife, and the deceased had gone together to an ice cream supper and fish fry at George Norris'. No unpleasantness or disagreement between any of the three was noted by any of the others at this party, and the three returned together to their homes.

According to Judge Burnett, husband of the deceased and the chief witness for the State, he was awakened about 2:30 a. m. by sounds of arguing between the appellant and his wife while they were in the yard, though he could not understand what was being said. He got up, unlatched the screen door and let his wife in the house. His wife returned to the porch and he heard her ask "What did you bring your gun out here for?" and appellant replied "Woman, I'll shoot your damn brains out." His wife returned inside the room and was standing at the closed screen door with her hand on the latch when shot by appellant. The gun shot came from immediately in front of the door.

■ The screen door, containing the hole in the screen wire made by the shell load passing through it, was properly received in evidence.

Witness immediately went to his wife, and while ministering to her appellant called to him to "step out there" a minute. This the witness refused to do, but left a few minutes later to go for officers of the law. It should be noted that Ziphia' Ward who lives in part of the house occupied by the Burnetts testified that being wakened by the shooting she immediately wakened her granddaughter, Letha Mae Reid, and they state they heard appellant call to Judge Burnett that he wanted to speak to him a minute.

Shot and wadding fired from appellant's shotgun by him entered deceased's upper thigh, penetrated the intestines and she died in a few minutes.

The appellant's version of this homicide is that upon their return from the party deceased entered her home, and he and his wife entered theirs. Just as he went on his porch a stray dog that had been annoying him for several days jumped off the porch. About ten minutes after entering his room he heard this dog on the porch again. He got a shotgun shell and removed some of the shot therefrom, then loaded his gun with this shell. Opening his door quickly he made a snap shot at the dog, shooting from the hip as the dog made a break off the porch. Appellant stated he had never had a disagreement with deceased at any time, and denied vehemently that he ever left his home after once entering it, or that he made any statement as to blowing anybody's brains out, or that he called to Judge Burnett after the shooting, and claimed he immediately re-entered his house after shooting at the dog and was unaware at the time he had shot any one.

■ However in about 5 or 10 minutes after he had re-entered his house he heard deceased start screaming. In a written statement made by the appellant on May 5, 1944, and properly admitted in evidence, appellant said "By the time I got in the house my wife began to holler and said 'what have you done.' I heard the girl (deceased) hollering next door at the time my wife said that."

In appellant's opinion his porch is a little lower than the porch on the deceased's house, but his house is a "little further back" from the street.

The testimony of appellant's wife was largely corroborative of appellant's.

The able trial judge's oral charge to the jury fully covered the offenses of murder in the first and second degrees, and manslaughter in the first degree. There were no objections interposed to any of the evidence or testimony during the trial, nor should any have been interposed.

The points argued by appellant's counsel in his brief are that the trial court erred in refusing appellant's written charge No. 2, which was as follows: "(2) The Court charges that if the State has failed to show motive on the part of the defendant in firing the fatal shot, then and in that event it has fail to make out a case of murder." And further that under the evidence appellant was not guilty of manslaughter in the first degree.

■ Section 320 of Title 14, Code of Alabama 1940, defines manslaughter as follows: "Manslaughter, by voluntarily depriving a human being of life, is manslaughter in the first degree; and manslaughter committed under any other circumstances is manslaughter in the second degree." Thus manslaughter is not defined, except as to degrees. The section must be read in connection with the common law, which defines manslaughter in the first degree as the unlawful and felonious killing of another, without any malice, express or implied, by voluntarily depriving him of life. Turner v. State, 160 Ala. 55, 49 So. 304.

■ Ample evidence was introduced by the State from which the jury could well find that the elements of manslaughter in the first degree were present. In our opinion the physical facts of the location of the houses and porches, the passage of the load through the screen door, and the nature of the wound inflicted on deceased, and the partial corroboration of Judge Burnett's testimony by two witnesses, are highly persuasive of the truthfulness of Burnett's version of this shooting, rather than the somewhat tortured explanation of the shooting given by appellant. The jury, with the witnesses and other evidence before it certainly could not properly be said to have arbitrarily rendered its verdict.

■ The motion for a new trial presented nothing other than questions passed on in the main trial and was properly denied. Ware v. State, 28 Ala.App. 485, 188 So. 76.

238

The appellant's contention that the State's case failed because no motive was shown is without merit. This element, deep in the mind of the accused, could only be shown absolutely and positively by testimony of the accused himself. It would indeed be a court room phenomenon should an accused admit an evil motive. It is therefore not indispensable to a conviction in any criminal proceeding that the prosecution show a motive for the crime, and guilt may be established without the production of evidence pointing to a particular motive entertained by the accused. Clifton v. State, 73 Ala. 473; Ward v. State, 182 Ala. 1, 62 So. 703.

Affirmed.