114 So.2d 407

Madison **STRICKLAND**, alias, etc.

v.

**STATE of Alabama.**

5 Div. 712.

Supreme Court of Alabama.

Aug. 13, 1959.

Rehearing Denied Sept. 17, 1959.

Walker & Walker, Opelika, and R. C. Wallace, LaFayette, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant was convicted of murder in the first degree and was sentenced to life imprisonment in the penitentiary. The deceased, Charles Gordon Crenshaw, was fourteen years of age and the evidence is undisputed that he had no altercation with appellant when he was killed and was only trying to lift his mother, who had fainted and had been shot by appellant. A motion for a new trial was overruled.

■ The trial consumed three days and on the morning of the third day, appellant moved for a mistrial on the ground that the jury had been taken out of Chambers County both the preceding nights and lodged at a hotel at Opelika in adjoining Lee County. After the motion and a stipulation that the ground of the motion was true, the following occurred:

"The Court: It is a fact that because the sheriff of this county informed the court that there was no available place in the county where the jury could be kept together, as provided by law, and the court was convinced that that was true, the court ordered the sheriff to find some suitable place in the opinion of the sheriff of this county where this jury might be kept together during the night. The sheriff informed the court that the only place he could find was, in substance, the hotel at Opelika, and I believe it was the Martha Scott Hotel, the old Clement Hotel. And thereupon the court, because there was no available place in Chambers County, so far as the sheriff knew and so far as the court knew, where this jury

could be kept together, the court ordered the sheriff of Chambers County to take this jury to the Martha Scott Hotel in Opelika, Alabama, then and they were in the custody of Mr. J. C. Magee, a deputy sheriff of this county. That is true.

"Mr. Walker: Of Chambers County.

"The Court: Of Chambers County, yes, sir. And the motion for a mistrial is overruled."

Appellant argues that this amounted to a separation of the jury, and a separation being shown, the burden is on the State to affirmatively establish that the separated juror or jurors were subjected to no influence or contacts that might have influenced their verdict. But no separation was shown, either in travel to or from the hotel or at any time while the jury was absent from the courthouse in Chambers County. We do not think the taking of the jury by the court appointed bailiff to suitable accommodations in Lee County amounted to a technical separation. The case of Hannah v. State, 212 Ga. 313, 92 S.E.2d 89, 93, can be distinguished in at least two particulars: there, the jury was actually and physically separated during the night, which was spent at a motel in another county, while here, there was no such evidence; there, it did "not appear that the jury was given any instructions by the court not to consider the case while they were out of the county, and until they had returned to the courtroom," while here, the trial court gave the jury explicit directions not to talk about the case among themselves or to anyone else when court recessed each of the two nights in question. The motion for a mistrial was properly overruled.

■ Appellant earnestly insists that the court erred in permitting the solicitor to cross-examine his own witnesses, three brothers, Byron, Thomas and Bobby Crenshaw, all of whom were present at the time their brother, Charles Gordon Crenshaw was killed.

The tendencies of the evidence are that appellant, although a married man and father of a child, had been going with Myrtis Crenshaw Doler for two and a half years and on the night of August 30, 1958, he was looking for her. He went to her mother's home around 9:00 P.M. inquiring for her but was told she had gone to Atlanta, Georgia. He left with Thomas Crenshaw, Myrtis' brother, and they went to an aunt's house looking for Myrtis but she was not there. Then he and Thomas parked near the aunt's house and waited. Around midnight, the Crenshaw car passed. Bobby Crenshaw was driving, his sister Myrtis was to his right and to her right was their mother, Catherine Crenshaw. Three Crenshaw brothers were sitting on the rear seat, Byron, a cripple, sat behind Bobby, Charles, the deceased, sat in the middle, and James, a blind brother, sat on the right. Myrtis' two small children were also in the back.

When the Crenshaw car passed, appellant, with Thomas in his automobile, turned around and sought to overtake the Crenshaw car. Each passed the other two or three times and finally appellant's car blocked the road to the extent that the Crenshaw car could not pass. Appellant got out of his car and came back to the Crenshaw car and told Myrtis to get out of the car because he wanted to talk with her. From that point on, the testimony was in sharp conflict, but shortly thereafter, Catherine was pushed, pulled or fell from the car and she fainted. Charles was down on his knees trying to help his mother, who was on the ground. Appellant began firing his pistol, shooting Catherine twice in the back, shooting Charles fatally, and Myrtis was shot more than once. Appellant left in his car and later surrendered to the Sheriff of Chambers County. The dead and wounded Crenshaws were taken to a hospital at Roanoke in Randolph County.

Byron, Thomas and Bobby Crenshaw were called as witnesses for the State in that order. Each had previously been called before the circuit solicitor and made a

sworn statement as provided for by Act No. 818, Acts of Alabama 1951, p. 1451, Pocket Part, Tit. 13, § 229(2). They had made the same statement to the grand jury. But at the trial, they testified that some strange man they did not know did the shooting and ran away and that they did not see appellant shoot anyone. They also swore that they had not told the truth in their statements to the solicitor and to the grand jury. The solicitor pleaded surprise and the court then allowed him to lead and cross-examine the three witnesses as to what they had previously told the solicitor or the grand jury. It is this action of which appellant complains. Appellant states in brief that "at no time did the solicitor claim surprise at any part of the testimony of Thomas Crenshaw." However, the record discloses that on his direct examination the solicitor stated, "If the court please, I am pleading surprise on him, too."

It is not necessary to discuss in detail the objections raised by appellant to the action of the court in permitting the State to cross-examine these three witnesses called by the solicitor. They were taken into custody on the afternoon of the first day of the trial, and they asked to be recalled as witnesses. They were recalled the second day and they then testified that they had not told the truth on the stand the day before.

The effect of their testimony was that when appellant came up to the Crenshaw car, he ordered Myrtis to get out and when she did not, he pulled her out and, in so doing, Mrs. Catherine Crenshaw was pulled out and fell on the ground in a fainting condition; that the deceased was trying to help his mother while appellant and Myrtis were arguing; that appellant pulled his pistol and started shooting, and that there was no strange or unknown man present with a gun. They also testified that they had received $1,275 for a release of their civil claims and that except for an attorney's fee of $25, the five heirs of deceased received $250 each. Two of the

brothers also testified that Owen Strickland, a brother of appellant, gave them $50 to sign an affidavit to the same effect as their testimony on the first day of the trial which they repudiated on the second day. In view of these circumstances, the jury had both versions of their testimony and could decide which, if either, was to be believed. Each witness was cross-examined as to each version and the action of the court with regard to these witnesses properly served the interests of justice.

Appellant contends that the court erred in permitting Sheriff Abney to testify to a statement by defendant that he had had to shoot some of the Crenshaws, when the corpus delicti had not then been proved. Assuming, without deciding, that this was error, it was cured by the subsequent testimony of defendant that someone had hit his hand and his pistol had fired and that he had shot some of the Crenshaws. Hardie v. State, 260 Ala. 75, 68 So.2d 35; Dyer v. State, 241 Ala. 679, 4 So.2d 311; 7 Ala. Dig. Criminal Law ☜1169(3). Moreover, any possible error was cured by the testimony of subsequent witnesses, including the defendant, proving the corpus delicti. Cooley v. State, 233 Ala. 407, 171 So. 725; Phillips v. State, 248 Ala. 510, 28 So.2d 542.

There also was no error in failing to exclude Sheriff Abney's testimony as to the puddles of blood, the bullet and cartridge hulls he found at the place of the shooting because he had been told by Bobby Crenshaw where the shooting took place. No citation of authority is necessary to support the ruling of the trial court. It is obvious that persons not present on the scene must be directed to it before they can testify as to the physical facts. This also applies to the ruling on the testimony given by Deputy Herman Williams.

Appellant argues that his motion for a mistrial should have been granted because State's witness, Cranford Cox, testified as to something Thomas Crenshaw told him after the shooting. The questions

and answers, omitting the objections and rulings, read:

"Q. After Thomas Crenshaw came to your house, what did you do, if anything?

"A. Thomas came over to the house and asked me would I carry him and his two brothers to Roanoke to the hospital—

(Objections and motions)

"The Court: He said what now?

"A. Asked me to go carry him and his two brothers to Roanoke to the hospital, that Maddy Strickland had shot his—"

That was as far as the witness got. The court sustained appellant's objection and instructed the jury not to consider the statement. As can be seen, the statement was not completed and no substantial right of appellant was injuriously affected.

■■ It is next argued that the admission into evidence of the release of civil liability signed by Bobby Crenshaw, as administrator of the estate of Gordon Crenshaw, acknowledging the receipt of $1,275 from Madison Strickland, and ratified by the other Crenshaws, was error. When introduced, one of appellant's counsel stated there was no objection—the other did object. Assuming, without conceding, that the court erred, the error was cured under the rule that erroneous admission of evidence is not ground for reversal if the facts testified to were subsequently proved by similar evidence produced by defendant. Hamlett v. State, 19 Ala.App. 218, 96 So. 371; 7 Ala. Dig. Criminal Law ☜1169(2). Later in the trial, appellant introduced a duplicate release, which was admitted into evidence, with the following statement:

"Mr. Walker: We want this whole transaction to go to the jury, and we ask that this other release, Bobby Crenshaw release as administrator of the estate of Catherine Crenshaw, be admitted in evidence. It is the duplicate

of the very statement you got from Bobby."

Moreover, in view of the peculiar circumstances of this case, this testimony was admissible as affecting the credibility of the witnesses. The Crenshaws were testifying that their previous sworn testimony was false and it was relevant to show financial inducement in the form of payment of damages where neither a claim nor a suit had been filed. The situation in Helms v. State, 35 Ala.App. 187, 45 So.2d 170, was vastly different than the one here.

■ Another alleged error is concerned with the testimony of Sheriff Gunn of Randolph County, a witness for the State. The witness Gunn testified on cross-examination that the reputation of Bobby Crenshaw for truth and veracity was bad and that he would not believe the witness Bobby Crenshaw on oath in a court of justice. On redirect, the following occurred:

"Q. (By Mr. Young) Mr. Gunn, I would like to ask you one thing. In face of the circumstances yesterday, prior to your leaving LaFayette, would you now believe Bobby Crenshaw when he testified, if he testifies to the same thing he said down there?

"Mr. Walker: We object to that. That is not a qualifying question.

"The Court: Overrule your objection.

"Mr. Walker: We reserve an exception.

"Q. In face of the circumstances. A. I believed what he was going with, yes, sir."

Not only does this answer not make sense, but no prejudice resulted to appellant because the witness had already testified that he would not believe Bobby Crenshaw on oath.

■ It is next urged that the cross-examination of appellant was conducted in such

a manner as to constitute reversible error. The questions complained of are numbered:

"(1) And you were the cock of the walk down there in that neighborhood, wasn't you?" Objection to this question was sustained.

"(2) You were the whip boy in that community, wasn't you?" (No answer).

"(3) And you couldn't stand anybody refusing you, could you?" (No answer).

"(4) You don't allow people in your community down there to refuse you, do you?" (No answer to the question).

"(5) And you were the satchel boy in that neighborhood down there, too, wasn't you?" (Objection sustained).

"(6) Mr. Strickland, you couldn't stand for any woman to refuse you, could you?" (No answer).

"(7) And Myrtis Crenshaw refused you there at that time, didn't she?"

Answer: "Myrtis Crenshaw has never refused to go anywhere with me."

We consider most of these questions to be nonsensical forensics on the part of the solicitor. Neither the court nor counsel for the defense knew what "whip boy" or "satchel boy" meant. Presumably, there was no local connotation to the expressions because the trial court and one of appellant's attorneys reside in Chambers County. In any event, the rule is that improper questions not answered are harmless. Coats v. State, 253 Ala. 290, 45 So.2d 35; Wimberly v. State, 204 Ala. 629, 86 So. 900.

Appellant argues that the court erred in refusing to give twelve requested written charges. These charges are not subject to our review. The reason is stated in Turner v. State, 266 Ala. 250, 96 So.2d 303, 304:

"There is in the record following the oral charge a heading: 'Written charges requested by defendant before the jury retired and refused'. Four charges are then set out and numbered one to four, inclusive. But the record does not show that the judge marked them 'refused' and signed his name on them. This is required by section 273, Title 7, Code of 1940, to cause them to become a part of the record and subject to review. So that we cannot review these charges on this appeal. Berry v. State, 231 Ala. 437, 165 So. 97. * * *"

The motion for a new trial included many of the questions raised on this appeal. The evidence sustained the verdict of the jury and the motion for a new trial was properly overruled.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.