213 So.2d 865

**Curtis Huey RODEN**

v.

**STATE.**

8 Div. 140.

Court of Appeals of Alabama.

March 19, 1968.

Rehearing Denied April 16, 1968.

Ralph E. Slate, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This is an appeal from a judgment of conviction for the offense of manslaughter in the first degree. Punishment was fixed at twenty-one months' imprisonment.

The following statement of the facts appears in appellant's brief:

"State's evidence tended to show that on the morning of June 18, 1966, the body of Audrey Dean Bean was found about five miles east of Hartselle lying off the highway in some tall grass. The state's evidence further tended to show that she died as a result of being struck by an automobile and the examination of the defendant's automobile revealed that it struck the deceased. The evidence tended to show further that there were no eye witnesses to the accident, that the deceased was walking along the north side of the highway in a westerly direction and that there was tall grass which blocked visibility of the body at any distance west of the scene. The evidence further tended to show that the defendant proceeded on without stopping and went to bed. Later on that day and while at work the defendant heard of the accident and phoned the Highway Patrol and consented to their examination of his car to determine whether or not it was involved."

The record shows that Mr. Vernon Richardson and Mr. Sidney Francis heard the impact and went to see what had happened. They found the bodies of Mrs. Bean and her fourteen year old son, killed by the same automobile. Mrs. Bean's leg was severed from her body and was lying some distance away. The car tracks, visible in the tall grass, showed the right wheels were four feet four inches off the pavement for a distance of around 210 feet.

Mr. Francis testified after he heard the car hit something he saw it go by where he was sitting. It seemed to slow a little at first but after about 50 or 75 yards it seemed to speed up and it passed his place going about 65 or 70 miles an hour.

The evidence tended to show that bits of broken glass, which appeared to be fragments of an automobile headlight, were first found about 42 feet from where the tracks left the pavement. Mrs. Bean's body was 36 feet beyond that point in a northwesterly direction. The boy's body was 90 feet from the point where the glass was first found.

After proper predicate was laid as to its voluntariness a written statement signed by defendant was introduced in evidence. The pertinent portions of said statement read as follows:

"I am employed by the Hi-Fi Club in Huntsville where I work 6 nights a week as a musician. On the night of June 17, 1966 I went to work at 8 P.M. & got off

at 12:30 A.M. I left the Hi-Fi Club around 2 A.M. & visited some other place around Huntsville. Somewhere around 8 A.M. or 8:15 A.M. I left Huntsville & started to Hartselle where I live."

"I was very sleepy and I recall running off the road a couple of times. Somewhere along the route on Alabama Highway #36 I dozed off and was awakened when I hit something. Thinking I had hit a mail box or sign along the road, I glanced in the mirrow & not seeing anything I continued on to where I live.

"When I arrived home I looked at the damage on my car & noting that the radio antenna was broken off except for the wire, I cut the wire & threw it into the yard. I looked at the damage before going to bed but didn't cut off the antenna until I started back to work on Saturday night. I went to work at 9 P.M. on Saturday night and at the 10 P.M. break I learned of the accident with the 2 people getting killed. Someone told me they were looking for a new, blue heavy car, either a Buick or Cadillac and after some thought I decided I had been along at about that time & the place where I recalled hitting something was in that vicinity. I went into Mr. Clarks office and told him to call the Highway Patrol for I thought I was the one who had hit those people. The patrolmen came by, looked at my car and brought me to Decatur."

Photographs of the automobile showing its damaged condition were introduced in evidence.

Mr. Mearl Wigginton testified that between 9:30 and 10:00 o'clock on the morning in question he was traveling east on this road. He saw Mrs. Bean and her son walking west on the north side, their right hand side. They were about two feet off the pavement and the boy was walking behind his mother. A mile or mile and a half east of where he had seen Mrs. Bean and her son he met a blue '63, '64 or maybe '65 model Cadillac automobile. The Cadillac pulled over into Mr. Wigginton's lane of travel, all four wheels on the south side of the center line, and traveled as far as 100 feet before it got back on its side of the road, some 50 or 75 feet before reaching Mr. Wigginton's car. The witness said he applied his brakes and pulled his car onto the shoulder of the road when he saw the Cadillac coming on his side of the road. In his judgment the speed of the Cadillac was about 60 miles per hour.

Dr. Van B. Pruitt, Jr., a State Toxicologist, whose qualifications were admitted, testified that on the afternoon of June 18, 1966, he examined the body of Mrs. Bean. The injuries were described as follows:

"The body evidenced numerous injuries about the torso and the extremities. First and most obvious, the entire leg, including the left hip bone, was torn from the body. The muscles about the left waist and buttocks were extremely torn and lacerated. The right leg evidenced numerous fractures extending from the upper leg to the ankle. Both of the bones of the lower leg were extremely fractured, and the fractured edges were torn and protruding from the front portion of the leg approximately three or four inches. The leg from the left side, including the hip, was likewise similarly fractured in several areas including the knee, which was completely shattered. There were abrasions about the back of the body including the left and right shoulder areas. And it was readily obvious that there was injuries to the head consisting primarily of two deep penetrating lacerations, which are tears or cuts in the top of the head; one located immediately to the right of the midline and the other immediately left of the midline. Both of the lacerations measuring three inches in length. And there was a rather large piece of bone fragment from the skull protruding from the laceration on the right side of the head. The entire cranium was fractured in numerous areas, principally about the back of the head. There was a depressed area inward to the brain in which several of the broken bone fragments had lacer-

ated the brain substance and the lacerated and torn brain tissue was readily observed protruding from the wound. There were numerous other minor injuries or minor in respect to the injuries described. They consisted of abrasions over the body, which we commonly call "skinned places" with superficial tears of the skin or the surface flesh, and evidenced the—and evidence of these injuries about the face and chin."

This witness testified he removed fragments of glass, small flakes of paint and torn pieces of fabric from the torn muscle and bone of the spine; that he also examined defendant's automobile and found threads or fabric on the right front window and door posts; that he made a comparison test of these fibers with the material in Mrs. Bean's dress and they were identical; that there were numerous small pieces of "yellowish gelatinous material" which had the appearance of fat, and tissue of human organ across the right front portion of the hood of defendant's car. There was paint on deceased's dress and this paint and the paint chips taken from deceased's spine was identical chemically with paint samples taken from the car.

No evidence was presented by defendant.

■ To constitute manslaughter in the first degree there must be either a positive intention to kill or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence. Nixon v. State, 268 Ala. 101, 105 So.2d 349; Gurley v. State, 36 Ala. App. 606, 61 So.2d 137; Turner v. State, 38 Ala.App. 73, 77 So.2d 503, certiorari denied, 262 Ala. 704, 77 So.2d 506.

■ It is well settled that if one drives an automobile in such a manner as to evidence a wanton and reckless disregard of human life at the time and place and under the circumstances, and such driving proximately causes the death of another, the act would be manslaughter in the first degree whether the positive intention to kill is proven or not. Reynolds v. State, 24 Ala.

App. 249, 134 So. 815; Graham v. State, 27 Ala.App. 505, 176 So. 382; Gurley v. State, supra, Turner v. State, supra.

Appellant's counsel argues in brief that the evidence showed nothing more than simple negligence; that there was no legal evidence in the case tending to prove an intentional act or wanton conduct on the part of defendant and that the court erred in refusing appellant's written request for the affirmative charge and denying his motion for a new trial on the grounds questioning the sufficiency of the evidence.

■ The refusal of the requested affirmative charge is not a matter for our review. In setting out the written charges the clerk has not shown that they were marked "given" or "refused" and signed by the trial judge. Turner v. State, 266 Ala. 250, 96 So.2d 303; Strickland v. State, 269 Ala. 573, 114 So.2d 407.

■ We are of opinion the evidence was sufficient to justify the finding of the jury that the defendant was guilty of such wanton and reckless driving of his automobile at the time and place deceased was struck as would constitute manslaughter in the first degree, and that the court did not err in denying the motion for a new trial.

■ Under the facts of this case it was within the court's sound discretion to admit the testimony of Mr. Wigginton that the Cadillac was driving on the left side of the road a few seconds and only a short distance from the place where deceased was struck. 8 Am.Jur.2d Sec. 952, p. 500; See also cases collected in the Annotation: Evidence—Prior Manner of Driving, 46 A. L.R.2d 77, Sec. 19.

This testimony was not inadmissible because he could not tell who was driving the automobile. Graham v. State, 25 Ala.App. 44, 140 So. 621.

■ The officers arrived at the scene promptly after the accident. Several pictures were taken by one of them before the body of deecased was moved. Objections

were interposed to the introduction of pictures marked State's Exhibits 12 and 13 showing the severed leg and the lower portion of the body of deceased on the ground that "whatever probative value it might have is overcome by the prejudice that would be done to defendant because of the mutilation shown." It is our opinion these photographs shed light on, strengthen and illustrate the truth of other testimony in the case and were allowed in evidence without error. McKee v. State, 253 Ala. 235, 44 So. 2d 781.

We find no reversible error and the judgment is due to be affirmed. It is so ordered.

Affirmed.