277 So.2d 423

**Gene Dillard WILKERSON**

v.

**STATE.**

**1 Div. 331.**

Court of Criminal Appeals of Alabama.

Jan. 23, 1973.

Rehearing Denied Feb. 27, 1973.

Warren L. Finch, Mobile, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

HARALSON, Supernumerary Circuit Judge.

The appellant was indicted and tried for murder in the second degree, convicted of manslaughter in the first degree, and sentenced to eight years imprisonment.

Briefly stated, the evidence for the State tends to show that on the evening of March 6, 1971, the wife of the decedent, Clarence Malcolm Harvison, with her two small children, was visiting with the wife of the appellant in his home. She had seen appellant and her husband shortly before in a nearby cafe. The appellant came home about five or six o'clock and was drunk at that time. At his request, she left and brought her husband, the decedent, back with her to the home of the appellant and they, with several others, remained there while the men had a sandwich made. The appellant, being unable to eat, gave his sandwich to the decedent and shortly thereafter appeared to be drowsy and went to sleep. About that time Ray Foster and Jerry Wilkerson came in and remained throughout the occurrence which is the basis of this case. The appellant apparently awakened, jumped out of his chair, came into the kitchen and hit his wife, knocking her against the wall. The decedent got be-

tween them and the appellant threatened to kill his (the appellant's) wife. Decedent's wife then left and went to the police station to get the police. She heard some fifteen minutes later that her husband had been shot. John Tillman, a fourteen year old boy who lived nearby, testified that he was in front of the appellant's home and saw appellant and decedent wrestling on the front porch with appellant holding a pistol in his hand and heard decedent say he was not afraid of the gun. They wrestled through the front door opening and back into the house and shortly thereafter he heard noises which sounded like gun shots.

After the incident was reported to the police, three officers made an investigation and the appellant, during the investigation at his home, made certain statements to the officers, which statements are hereinafter referred to. The officers found a small amount of blood on the kitchen floor in the appellant's home and two bullet holes in the floor nearby; also a rag with what appeared to be blood on it in the bathroom and later they found, near the appellant's home on the outside, several rags in similar condition. The coroner testified that a .38 caliber pistol bullet was found lodged in the back of the decedent's head, which bullet was turned over to Dr. Grubbs, a State Toxicologist, who testified that the bullet was fired from the pistol above referred to, which was introduced into evidence along with the bullet.

The appellant did not testify but offered two witnesses, Jerry Wilkerson and Ray Foster. Both testified in substance that there was apparently no hard feeling between appellant and decedent and that at the time of the shooting the appellant and decedent were engaged in "horse play"; that the appellant snapped the gun two times and it did not go off, after which he fired two times in the floor; and that the decedent grabbed his arm when he raised it toward the ceiling and the gun fired again striking the decedent in the head and inflicting the fatal wound.

The appellant insists that the court erred in allowing certain statements made by appellant to the Bayou La Batre police officers who investigated this case without advising him of his *Miranda* rights to remain silent, etc. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Admittedly, nothing was said to him by the officers at the time advising him of these rights. When the matter was reported at police headquarters, several officers attempted an on-the-scene investigation at the home of the appellant where the body of the decedent, Dodo Harvison, was found with a wound in his forehead but still alive. Three of the officers; Police Chief George Crawford; Curtis Roensch, a patrolman; and Tom Deas, Chief of Detectives; testified to statements made in their presence by the appellant at his home during the investigation. Witness Crawford was alone when the alleged statement was made to him. The other two officers were together at the time the other statements were made to them.

Witness Crawford testified that appellant told him that Dodo had shot himself in the kitchen and that he (appellant) was asleep in the bedroom, and that when he awakened he went into the kitchen and found Dodo on the floor and some blood nearby.

Witness Roensch testified that appellant told him that Dodo had shot himself.

Witness Deas testified that the statement made to him, after he had examined the scene of the killing, was that the appellant spoke up in the kitchen "that he fired a revolver through the floor twice and raised his arm intending to shoot into the ceiling and that the victim caught his hand and the third one fired evidently hitting him in the head"; and that appellant went into another room, got the gun and handed it to him.

Each of the officers testified that the appellant at the time the statements were made, during the investigation of the killing, was not a suspect, and was not in custody. It further appears from the record that the appellant was in no way restrained and that at one time between visits from the investigating officers, he was left alone in his home for some thirty minutes or more. The Chief of Police testified that he had advised the defendant to stay there until they could finish the investigation but did nothing further toward restraining or placing him into custody. He was arrested a short while after the alleged statements were made.

In *Miranda,* supra, the Court defines custodial interrogation as follows:

". . . By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . [T]here can be no doubt that the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves."

The appellant insists that the admission of the statements to the officer by the appellant heretofore referred to was error because of the failure on the part of the officers to properly advise appellant of his *Miranda* rights. It is argued by the appellant that at that time, although not under arrest, he was actually restrained of his freedom of action by the statement made to him and above referred to by the Chief of Police.

The question of whether the appellant was restrained or otherwise deprived of his freedom of action when the statements were made to the officers is a close one and perhaps would call for a "hair line" decision as to whether he was entitled to the *Miranda* warnings under the circumstances, but this question is not properly before this Court for decision because

when this testimony was admitted into evidence in the trial court no proper objection was made by appellant and no rulings of the trial court invoked. Truex v. State, 282 Ala. 191, 210 So.2d 424.

The failure to object to this evidence waived any supposed error in its admission. See cases collected in Ala.Digest, Criminal Law, Vol. 7 ☞No. 1030(1). No error was committed by the court in this respect.

 At the conclusion of the State's testimony the appellant made a motion to exclude the evidence because no malice was shown, no unlawful act nor intent shown or implied, and the elements of murder in the second degree were not proved. The motion was overruled by the court without error since the verdict was for manslaughter in the first degree, the elements of which do not include malice. The question sought to be raised by this motion is moot because of the verdict.

Further, in certain cases intent to kill is but an alternative ingredient of manslaughter in that degree and the same state of mind can be imputed from conduct wanton and reckless toward human life and placing another in peril of great bodily injury or likelihood of death, and if death results therefrom the crime may be manslaughter in the first degree. Garrett v. State, 268 Ala. 299, 105 So.2d 541 (*Garrett* involved the unintentional but reckless or wanton use of firearms, resulting in death to another.); Anderson v. State, 40 Ala. App. 509, 120 So.2d 397, cert. denied 270 Ala. 575, 120 So.2d 414 (reversed, but not on this point, 366 U.S. 208, 81 S.Ct. 1050, 6 L.Ed.2d 233).

At common law manslaughter in the first degree is the unlawful and felonious killing of another without malice, express or implied, by voluntarily depriving him of life. Mount v. State, 32 Ala.App. 235, 24 So.2d 142.

In Roden v. State, 44 Ala.App. 483, 213 So.2d 865, this Court held that to constitute manslaughter in the first degree there must be a positive intention to kill or an act of violence from which ordinarily in the usual course of events, death or great bodily injury may result.

We hold that the verdict in the case at bar was amply supported by the evidence adduced by the State and the case was properly submitted to the jury on a question of fact.

From a consideration of the record, we find no error to reverse and the judgment in this cause is due to be affirmed.

The foregoing opinion was prepared by Honorable W. J. Haralson, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended. His opinion is hereby adopted as that of the Court.

The judgment below is hereby

Affirmed.

All the Judges concur.