Appellant-defendant was charged in an indictment with the unlawful possession of marijuana after a prior conviction for the same offense. A jury found him guilty and declined to assess a fine. The court fixed his punishment at imprisonment for six years.
The prosecution was based on the Alabama Uniform Controlled Substances Act. Acts of Alabama 1971, Act No. 1407, Vol. III, P. 2378. Marijuana is included in § 204 (d)(10) thereof as a Schedule I Controlled Substance. Section 401 thereof prescribes the penalty for "subsequent offenses relating to possession of marihuana" at imprisonment for not less than 2 nor more than 15 years and, in addition, permits a fine of not more than $25,000. Unquestioned proof was made of defendant's previous conviction of possession of marijuana.
The guilt or innocence of defendant of the possession of marijuana in instant case hinges in almost all respects upon the testimony of two witnesses only: Deputy Sheriff Ray Norris and the defendant. They were the only two persons present on July 22, 1977, when Officer Norris testified he found the alleged substance in a match box in a "van type truck" in the possession of defendant, which substance was thereafter analyzed and tested and proved to be marijuana. Also, according to Norris, there was a paper bag in the truck behind the driver's *Page 752 
seat in which was a small amount "of what looked to be marijuana."
According to the testimony of defendant, he had been fishing from his van type truck; Officer Norris approached him and asked him if he had seen a person named by the officer and stated that he wanted defendant to set the person up for sale of drugs by the other person and that, upon defendant's refusal to agree to do so, Officer Norris went into the truck and returned with a match box and stated, "I've got you now."
Although stoutly contending that the testimony of Officer Norris is not true in material respects, there is no contention that the evidence is not factually sufficient to support the verdict of the jury. Appellant's chief contention is that the evidence presented by the testimony of Officer Norris was obtained under circumstances that deprived defendant of his Constitutional rights against self-incrimination and to the benefit of counsel, granted by the Fifth and Sixth Amendments, respectively, as extended to the area previously to the states by the Fourteenth Amendment, to the Constitution of the United States. Appellant insists that the admission of the evidence, consisting of the testimony of Officer Norris as to what defendant told him, is in conflict with principles set forth inEscobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758,12 L.Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966). Both cases make clear that not all pretrial incriminating statements made to officers by a defendant without benefit of counsel are inadmissible, that their admissibility is dependent upon the circumstances, particularly the stage, at the time the evidence was obtained, of the activity that led to the prosecution of defendant and whether defendant had voluntarily and understandingly waived his Constitutional rights. We hereby attempt to set forth a narrative of the material evidence relevant to the question.
The evidence for the State commenced with the testimony of Officer Norris. He testified that when he first saw defendant on July 22, 1977, defendant was in his truck at a little beaver pond off Brooksville Road; defendant was in the seat with his feet hanging on the edge of the door facing out of the truck. Immediately after such testimony was given, counsel for the State, evidently having in mind the propriety of an in camera hearing on the question of the admissibility of the testimony to follow, suggested a hearing out of the presence of the jury, and the jury was sent to the jury room. During the hearing out of the presence of the jury, Officer Norris was further interrogated by counsel for the State and cross-examined by defendant's counsel. Also on the in camera hearing defendant testified in response to questions asked by his counsel.
Testimony of Officer Norris on the hearing out of the presence of the jury was that upon his seeing defendant in defendant's truck, the officer drove his automobile up behind the van, parked it, got out of the car and started around the van; as he started around the van defendant threw a part of a rolled type, homemade cigarette into the edge of the beaver pond; he asked defendant, "What are you doing?" The witness didn't remember exactly what defendant said. He further testified that as he walked up to the truck, he could smell the smoke of marijuana, and he asked defendant if he had been smoking it, and defendant replied that he had. Mr. Norris then asked defendant whether defendant had any more and defendant said, "All I have is enough for me" or something to that effect. The two then walked back to the officer's car. No search of the truck had been made at that time. The officer then, "read him his rights." About that time three men came by in a truck, and Officer Norris had to move his car so they could get by. His testimony continued as follows:
 ". . . We got back out of the truck and I asked him if that is all he had. He replied it was. We walked back up to the front of the van. They [sic] was a match box sitting up on the motor cover —
 "Q. Is there a motor cover or console between the two seats? *Page 753 
"A. It is a motor cover is what I call it.
"Q. All right.
 "A. I asked him what was in the match box. At that time he said he didn't know. He handed me the match box and it contained vegetable material such as what I would say was marijuana or what I believed to be marijuana at that time.
"Q. Did you take that into your possession?
 "A. I did. At that time I asked him if he had any more, if that was all, and he said that was all he had. At that time I got in the driver's seat of the van, sitting in the driver's seat, and he had an old black chair sitting right behind the driver's side of the van, kind of behind the console. Sitting down on the floor board in a small brown candy sack is what I call it, small tote paper sack, was what contained just several little — just a small quantity of the green vegetable material."
Continuing his testimony, the witness said he had known defendant several years and knew that he had had a prior conviction for possession of marijuana.
On the in camera hearing, defendant's testimony was a complete denial of the testimony of the deputy sheriff as to practically all material points. He denied that he had been smoking marijuana. He said he had been smoking a regular cigarette that day. He did not toss a cigarette away as the deputy came up. He did not have any marijuana in his truck at that time; there was no match box in his truck.
In the trial before the jury, Officer Norris and defendant testified substantially in accordance with the testimony of the two, respectively, out of the presence of the jury. In addition, Officer Norris said that he read defendant his rights from a card in his billfold, which he read to the jury, and which contained a plenary statement of rights and warnings, including, his right to a lawyer, and that if he could not afford a lawyer one would be appointed to represent him if he wished "before any questioning." He said defendant indicated that he understood what the officer was talking about when he read him his rights from the card. He further testified that he offered defendant no hope of reward and did not threaten him in anyway to get him to say anything. He said that defendant stated that the match box containing the green vegetable matter that was afterwards analyzed and found to be marijuana, "was one of his friend's, that they had been together that morning and smoked a joint." Instead of admitting that he had attempted to get defendant to get another person to sell marijuana, the witness said, on cross-examination by defendant's counsel, that defendant asked the witness if the witness would go light on him if defendant would help the witness trap a particular person by buying marijuana from him.
In his testimony before the jury, defendant went into considerable details as to his previous contacts with Officer Norris, in which, according to him, there was some connection between him and Norris in attempting to catch others in the process of having marijuana. He said that immediately after the occurrence made the basis of the prosecution in this case, Officer Norris told him to call him at his office that afternoon; that Officer Norris then left in his car, but thereafter rode up to defendant while defendant was going to his mother's in his truck, took defendant with him, pointed out to him the person he wanted defendant to buy some marijuana from, but that defendant declined to do so and thereafter Officer Norris gave him a bond for him to get signed.
Although the testimony of defendant was in sharp and irreconciliable conflict with that of Officer Norris that he fully advised defendant of his "rights" and gave him warnings as prescribed by Miranda, the court was well within its province in accepting the testimony of Officer Norris as a basis for the admission of the incriminating statements made by defendant thereafter. As to the admissibility of any incriminating statements made before defendant's being advised of his rights and given appropriate warnings, we must look intently at the stage of the activity of Officer Norris at the time such statements were made. *Page 754 
 "We hold only that when the process shifts from investigatory to accusatory — when the focus is on the accused and its purpose is to elicit a confession — our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer." Escobedo v. Illinois, 378 U.S. 478, 492, 84 S.Ct. 1758, 1766, 12 L.Ed.2d 977, 987.
It is clear to us that, at the time of every statement made by defendant prior to the reading to him of his rights, as related by Officer Norris, no accusation had been made against defendant. In fact, it is doubtful that even an investigation as to his possession of marijuana had commenced. Although smoking marijuana necessarily involves possession of marijuana, the evidence does not indicate that Officer Norris ever even purported to make any charge against defendant for his having smoked marijuana that day. There is nothing in the record to indicate that he was tried for the possession of any marijuana other than the marijuana found in his truck. The first question asked defendant was "What are you doing?", a perfectly natural and casual question. The next question, as to whether he had been smoking marijuana, was also natural and casual. The next question, as to whether he had any more, could be said to be investigatory, but certainly it was not accusatory. Before defendant answered that he had no more than enough for himself, there was no basis for any accusation that he was then in possession of marijuana. With apparent consciousness of the then approach to an accusatory stage, his rights were then fully explained to him. His previous statements do not fall within the condemnation of either Escobedo or Miranda. His statements made thereafter were predicated upon full compliance with both.
Not until some time after Officer Norris commenced informing defendant as to his Constitutional rights was there a custodial interrogation of defendant.
 "In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Supreme Court of the United States set out the definition of custodial interrogation:
 "`By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" Sims v. State, 51 Ala. App. 183, 190, 283 So.2d 635, 641.
We further note that at no time during the hearing in camera or in the presence of the jury, was any objection made by defendant to the evidence relative to statements made by defendant to Officer Norris. We are appreciative of the responsibility of the trial court in safeguarding the constitutional rights of defendant, particularly in the area here involved, but the circumstances here indicated that the interrogation now considered objectionable was not deemed objectionable by defendant on the trial and it calls for application of the principle that whatever right he may have then had to a sustention of an objection was waived by his failure to object. Wilkerson v. State, 50 Ala. App. 150,277 So.2d 423, cert. denied, 291 Ala. 802, 277 So.2d 427 (1973);Shiflett v. State, 52 Ala. App. 476, 294 So.2d 444, cert. denied292 Ala. 749, 294 So.2d 448, cert. denied 419 U.S. 867,95 S.Ct. 124, 42 L.Ed.2d 105 (1973).
Appellant also urges that the acquisition by the officer of the match box and its contents consisting of marijuana, and the sack and its contents resembling marijuana was an unreasonable search and seizure in contravention of the Fourth Amendment to the Constitution of the United States. His premise for the contention is that the officer did not then have probable cause for believing that marijuana was in the truck. We cannot agree.
He had noted the match box in open view in the van or truck. Before seeing the match box, he had smelled the smoke of marijuana; he had seen defendant smoking a "homemade cigarette," which defendant had thrown into the edge of the water; defendant had told him that he had been smoking marijuana and that he had no more marijuana than was enough for *Page 755 
himself. Upon being asked what was in the match box, defendant replied that he did not know. The officer knew at the time that defendant had a criminal record as a possessor of marijuana. Although a match box in and of itself could not be considered sufficient as probable cause for belief that it contained marijuana, at the particular time it fit so nicely into the other circumstances that they together informed a perfect tongue and groove for reasonable ground for believing that marijuana was in defendant's truck. To this we add that there is a basis for a reasonable conclusion that the match box containing marijuana was voluntarily handed the officer by defendant.
Although there is little in the evidence to indicate that anything in the truck was taken by the officer other than items that were in the plain view of the officer, we have no doubt that a search warrant was not necessary to give validity to the conduct of the officer.
 "Where there is probable cause to believe that a vehicle, which is capable of being moved, contains evidence of a crime, law enforcement officers may search the vehicle without a warrant. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706." Landry v. State, 56 Ala. App. 421, 321 So.2d 759, 761 (1975)
No error prejudicial to defendant is found in the record, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328). His opinion is hereby adopted as that of the Court.
The judgment below is hereby
AFFIRMED.
All the Judges concur.