John Lee Kendrick, appellant, was indicted for murder by the Talladega County Grand Jury during its January 1983 term. At trial, on March 21, 1983, the jury found him guilty as charged, and he was sentenced to life imprisonment in the state penitentiary.
Gordon Zook testified at the trial that on October 3, 1982, he was employed as a deputy sheriff with the Talladega County Sheriff's Department and that at approximately 2:00 p.m. he received a call reporting a shooting at the residence of Mae Dates in the Odena Community. In a matter of minutes he arrived at the scene, where he found the body of a man later identified as Henry McCain. Subsequently, Mr. Conville and Mr. Jones, employees of the ambulance service, and Lester Nicholson, Chief Sheriff's Investigator for the south end of Talladega County, arrived. While Mr. Nicholson mapped out the area, examined the body and released it to the ambulance service personnel, Mr. Zook contacted witnesses to the shooting and began taking statements from them.
Kenneth Kelley, who had earlier driven John Lee Kendrick away from the scene, got into Mr. Zook's car with him, and, with Mr. Nicholson following in a second car, led the police officers to the spot where he had left Kendrick. Appellant was apprehended two or three miles away from the scene of the shooting. Mr. Zook testified that, from his staggering gait and the smell of alcohol *Page 907 
on his person, appellant appeared to have been drinking. During a search of appellant's clothing, Mr. Nicholson found in his boot a gun which he identified in court and described as a .38 caliber Smith and Wesson pistol.
Kenneth Kelley, testifying to events on the day of the shooting, stated that he was the owner and operator of a 1977 Oldsmobile Cutlass automobile in which he, John Lee Kendrick, Boots Stone, and Boots's nephew rode to the Mae Dates residence. In route, the four men stopped and bought half a case of beer. Kelley testified that they reached the residence at nine or ten o'clock and that, along with a group of other people, he was there most of the rest of the morning of October 3, 1982. He reported that the men stood around and sat around drinking beer, rum, and wine, talking and arguing about wrestling. There had been a wrestling match earlier and another match was scheduled for the following Saturday between appellant and Henry McCain.
At some point in the morning Kenneth Kelley, Henry McCain, Boots's nephew, and Calvin Jackson left and returned with another half case of beer. Kenneth Kelley reported that afterwards everyone was having a good time, but that the appellant and Bud Kelley got into an argument, during which Bud Kelley slapped appellant. The argument apparently centered around the scheduled wrestling match and betting on the match.
Kenneth Kelley reported that appellant took a piece of wood from Mae Dates's wood pile and approached Henry McCain from the rear with the apparent intention of hitting him with it. But Kenneth Kelley stopped appellant, who dropped the piece of wood.
After this incident Kenneth Kelley told John Lee Kendrick to get in his car so that he could take him home. Appellant got back into the back seat on the driver's side. Kenneth Kelley testified that Henry McCain then tried to hit appellant, but was prevented from doing so because the window of the car was partially up. Here, the State claimed surprise because Kelley had testified before the grand jury that Henry McCain had not said or done anything to the appellant. The court allowed the State to cross-examine its witness regarding the contradictory testimony.
After appellant, Boots Stone, Boots's nephew, and Kenneth Kelley were all in the car, Kelley proceeded to drive Boots Stone and his nephew home. During the trip appellant kept repeating, "Nobody slap me and live." After he let Boots Stone and his nephew out, Kelley drove appellant to a Mrs. Crawford's house, where appellant had been living. Appellant got out of the car, went in the house and got a gun and came back out to the car. He got in and demanded to be taken back to Mae Dates's house.
Kelley complied with appellant's demand. On the way back appellant waved the gun around and then continued to repeat, "Nobody slap me and live." When the two men returned to Mae Dates's residence, appellant asked where Bud Kelley was, and found that he was no longer there. Appellant then walked up to Henry McCain, who was sitting on a stump with a baseball glove on his hand, and said, "I'll just blow your brains out." Appellant aimed the gun at Henry McCain's head, the gun fired and McCain fell to the ground.
Appellant tried to get Kenneth Kelley to take him to Birmingham but Kelley refused. Then he asked to be taken to Childersburg, but Kelley still refused, saying that his car was "tore up." Finally, Kelley took appellant to a bridge in Odena and left him there. On the way to the bridge appellant said that he was still going to kill Bud Kelley, that Bud was next, and that he would kill the police too.
Alvin Smith testified that he was present when the shooting occurred and earlier when the arguments between appellant and Bud Kelley and appellant and Henry McCain took place. He corroborated Kenneth Kelley's testimony that appellant picked up a piece of wood and walked up behind Henry McCain but was prevented from hitting him by Bud Kelley. He also *Page 908 
substantiated Mr. Kelley's testimony that, on his return to Mae Dates's house, appellant carried a gun in his hand. Smith testified that when appellant discovered that Bud Kelley was not there, appellant walked up to Henry McCain and said something like: "Talked that stuff ya'll were talking a while ago. I ought to blow your brains out." Then he shot him.
Subsequent to his arrest appellant made a statement to the police confessing that he shot Henry McCain. When the State introduced the statement for admission into evidence, a voir dire examination of Gordon Zook followed. Mr. Zook testified that he was with Lester Nicholson when appellant was arrested and that Mr. Nicholson advised appellant of his constitutional rights and questioned him about his understanding of each of those rights. Mr. Zook said that appellant signed a form stating that he fully understood each of his rights and that of his own free will he wished to make a statement. Zook stated that, although he appeared to have been drinking, appellant seemed to comprehend what was said to him and that his answers to questions were responsive to those questions.
Lester Nicholson testified on voir dire that he advised Johnnie Lee Kendrick of his constitutional rights at the time of his arrest and that appellant stated that he understood each of those rights. Nicholson testified that appellant told his story twice and that it was the same each time. Nicholson wrote down the statement the second time for appellant's signature. Mr. Nicholson said that appellant had apparently been drinking, but that he could not be sure to what extent.
Appellant testified on voire dire that he remembered being arrested and being at the Sheriff's Department and remembered his brother and several other people being there, but did not remember signing the statement. He said that he was not sure if he remembered making any statements to Officer Zook, or having his Miranda rights read to him. He did admit, however, that he had had his Miranda rights read to him on numerous other occasions. He further confirmed that he recalled glancing over his statement before signing it, and that everything in it was true.
Appellant testified that he did not remember getting out of the car with the gun, but did remember saying, "Don't nobody slap me and live," and to McCain, "Man, what's wrong with you. You know I don't bother nobody." He said he guessed that after making that statement to McCain he started to walk off and the gun went off. He said he then got back in Kenneth Kelley's car and Kenneth took him to some bridge where he walked for a while until he was picked up by the sheriff.
At the conclusion of the voir dire testimony appellant's confession was admitted into evidence.
The first issue raised by appellant is whether the trial court erred in refusing to grant a mistrial because of a reference to previous warrants against appellant.
The reference to previous warrants occurred when, on cross-examination of Mr. Zook by the defense, he was asked if he had known appellant previously. He responded that he had. He was then asked if he had previously called appellant "Hooker" (a nickname). Mr. Zook responded that he had not, then stated, "The way I'm familiar with him is that we had warrants on him before and. . . ." At this point the defense objected; the objection was sustained, and the court instructed the jury to disregard the statement. The judge individually polled the jurors to determine whether they could disregard the statement and all twelve jurors responded in the affirmative.
A motion for mistrial implies a miscarriage of justice and is such a serious matter that it should be granted only where there is a fundamental error in trial which would vitiate the result. Floyd v. State, 412 So.2d 826 (Ala.Cr.App. 1981);Stennett v. State, 340 So.2d 67 (Ala.Cr.App. 1976); Ala. Code §12-16-233 (1975).
In Nix v. State, 370 So.2d 1115 (Ala.Cr.App. 1979), the court held that where the thrust of a prejudicial remark was indirect *Page 909 
and the trial court ascertained from each individual juror that the remark could be and would be disregarded the judge's actions support ed a finding that any harm or prejudice against defendant was cured. Similarly, in Borden v. State,337 So.2d 1388 (Ala.Cr.App. 1976), the court held that when a trial judge sustained an objection and properly instructed the jury to disregard the matter such action was not erroneous unless the matter was of such a nature that it created ineradicable bias or prejudice.
In the case before us a reference to previous warrants was not an incurable harm to appellant. The trial court acted properly in sustaining appellant's objection and admonishing the jury to disregard the statement. The action of the trial court in immediately giving curative instructions to the jury and individually polling jurors to determine whether each could disregard the remark was sufficient to eradicate any possible prejudice to appellant.
The second issue raised by the appellant is whether the State was entitled to cross-examine its own witness on the basis of surprise.
It is well established that whether leading questions will be allowed is within the sound discretion of the trial court and that the ruling of the trial court will not be overturned without a showing of abuse of discretion. Ervin v. State,399 So.2d 894 (Ala.Cr.App. 1981); Chambliss v. State,373 So.2d 1185 (Ala.Cr.App.), cert. den., 373 So.2d 1211 (Ala. 1979). Each case must rest upon its own particular circumstances.Blunt v. Strong, 60 Ala. 572 (1877). At the discretion of the trial judge, a party may interrogate, lead, and in effect cross-examine his own witness in order to show surprise. May v.State, 356 So.2d 772 (Ala.Cr.App. 1978); Randolph v. State,331 So.2d 766, cert. denied, 331 So.2d 771 (Ala. 1976); Stricklandv. State, 269 Ala. 573, 114 So.2d 407 (1959).
We have carefully reviewed the testimony of Kenneth Kelley, a witness for the State, who testified differently at trial than he had on several occasions under oath. At trial he testified that Henry McCain tried to hit appellant, whereas previously he testified that Henry McCain had never done a thing to appellant. The trial court did not err in granting the State's request to treat Mr. Kelley as a hostile witness on the basis of surprise.
The third issue raised by appellant is whether the trial court properly refused to grant a mistrial on the basis of a reference to the "murder." Sheriff John Dison, when asked to identify State's Exhibit No. 6, responded: "This is a weapon that was used in the murder. . . ." The defense again objected; the judge sustained the objection and polled the jurors individually regarding whether they could disregard the remark. All twelve responded that they could do so.
It is a basic premise that when prejudicial remarks have been made the trial judge is in a better position than is an appellate court to determine whether the remarks were so prejudicial as to be ineradicable. Favor v. State,389 So.2d 556 (Ala.Cr.App. 1980), Chambers v. State, 382 So.2d 632, (Ala.Cr.App.), cert. denied, 382 So.2d 636 (Ala. 1980);McAllister v. State, 44 Ala. App. 511, 214 So.2d 862 (1968). There is, moreover, a "prima facie presumption against error where the trial court immediately charges the jury to disregard the prosecutor's remarks." Favor v. State, at 561, quoting fromChambers v. State, supra.
We find that the trial court's actions in this case sufficiently eradicated the prejudicial qualities of the Sheriff's comment.
The fourth issue raised by appellant is whether a motion for mistrial was properly refused even though a reference to the "murder scene" was made by Lester Nicholson on cross-examination by the defense. The court confirmed the defense counsel's objection to the testimony, admonished the jury that they should exclude any reference to the "murder scene" from their minds in making a decision in the case and individually questioned the jurors as to whether *Page 910 
they could do this. All jurors answered in the affirmative. Appellant contends, however, that the cumulative prejudicial effect of references to previous warrants and to the murder was such that neither retraction nor rebuke could destroy it.
We have searched the record carefully in this case and have found no abuse of discretion by the trial judge. It is clear that the trial court was in the best position to determine whether there was a cumulative effect of remarks which was so prejudicial as to be ineradicable. Its ruling should not be disturbed on appeal absent a clear showing of abuse of discretion. Favor v. State, 389 So.2d 556 (Ala.Cr.App. 1980).
The final issue raised by appellant is whether the trial court properly admitted appellant's statement of confession into evidence. Appellant contends that the statement should not have been allowed into evidence because appellant was very intoxicated when the statement was made.
The evidence, taken on voir dire testimony, was contradictory in regard to appellant's level of intoxication. Both Zook and Nicholson testified that appellant answered questions put to him in a responsive manner. Nicholson testified that appellant made a statement about the events surrounding the shooting twice and that the stories were the same. Zook and Nicholson noticed a smell of alcohol on appellant's person at the time of arrest but only Zook noticed appellant stumbling.
Appellant's testimony itself was inconsistent. He remembered being picked up, and being at the Sheriff's Department as well as several of his relatives being there, but did not remember if his Miranda rights were read to him. He admitted that he was familiar with the Miranda rights and knew what they meant. He remembered signing one of his statements, and not the other, but admitted that everything in the statements was true.
In order for intoxication to render a confession inadmissible it must amount to a "mania" which impairs the will and mind to the extent that the person confessing is unconscious of the meaning of his words. A lesser state of intoxication, however, will not render a confession inadmissible. Palmer v. State,401 So.2d 266 (Ala.Cr.App. 1981); Tice v. State, 386 So.2d 1180
(Ala.Cr.App. 1980); Willis v. State, 342 So.2d 802 (Ala.Cr.App. 1976). Furthermore, in Palmer v. State, supra, the court held "[W]here ample evidence, even though conflicting, exists from which the trial judge could conclude that the appellant was not intoxicated to the extent of mania, the admission of a confession for a jury's consideration is not an abuse of discretion." Palmer, at 268. With regard to contradictory evidence at a voluntariness hearing, the court in Snider v.State, 422 So.2d 807 (Ala.Cr.App. 1982), held that when conflicting evidence is presented great weight will be given to the trial court's determination of the issue. The court in Snider also stated that the trial court's decision will be upheld unless it "is palpably contrary to the great weight of the evidence and manifestly wrong." Snider, at 809.
In this case there was conflicting testimony regarding the extent of appellant's intoxication at the time he made his statement. There was, however, ample evidence from which the trial judge could conclude that the confession was voluntary, and, since the decision of the trial judge was not contrary to the great weight of the evidence, it should not be disturbed on appeal.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 911